Syllabus.

## Richmond.

### KIBLER *v.* COMMONWEALTH.

March 25, 1897.

1. INDICTMENT—*Murder—How charged.*—It is not necessary, in an indictment for murder, to charge specifically the facts which constitute murder of the first degree. The common law form of indictment for murder is all that is necessary to support a finding of guilty of murder of the first degree under the statute.

2. DISCHARGE FROM PROSECUTION—*What terms of court to be counted.*—The term at which a prisoner is indicted for a felony is not to be counted as one of the terms contemplated by sec. 4047 of the Code, as amended. The terms to be counted are those after the prisoner has been indicted and held for trial.

3. CRIMINAL PROCEDURE—*Continuance—Presence of prisoner—Arraignment—Agreement of counsel.*—Before arraignment the prisoner need not be present when his case is continued. Upon the facts of this case the consent of counsel for the prisoner to a continuance of his case is binding on the prisoner, though he was not personally present.

4. CRIMINAL PROCEDURE—*Evidence—Relevancy—Striking out evidence.*—Where the answer of a witness is in itself admissible evidence, it is not error to refuse to strike the answer from the evidence in the case, merely because it was elicited in response to a question which appears to have been asked with a view to laying the foundation for the impeachment of the witness by another witness who is not thereafter introduced.

5. CRIMINAL PROCEDURE—*Objections to evidence—Bill of exceptions—Agreements of counsel.*—Stipulations between counsel that objections to evidence may be noted during its introduction, and that such objections may be taken advantage of in the appellate court as though presented in formal bills of exception, will not be regarded in this court. This court will not assume the labor and responsibility of searching through the record to discover objections made in the trial court.

6. CRIMINAL PROCEDURE—*Recent possession of fruits of crime—Presumption of fact—Jury to weigh all the evidence.*—The presumption of guilt arising from the unexplained possession of the fruits of crime recently after its commission is a presumption of fact, not of law. Standing alone it consti-

Statement.

tutes a *prima facie* case which will warrant conviction for larceny. But to incorporate this proposition into an instruction in a case of homicide tends to mislead the jury, and to prejudice the prisoner. The mere possession of the pocket-book of the deceased by the prisoner, who lived under the same roof with him, as a member of his family, though unexplained, cannot be said to create a strong and reasonable presumption that he murdered the deceased. It is for the jury to say what weight, under all circumstances of the case, should be given to the fact of such possession.

Error to a judgment of the Circuit Court of Page county affirming a judgment of the County Court of said county, rendered June 23, 1896, whereby the plaintiff in error was sentenced to be hanged.

*Reversed.*

The indictment was as follows:

"State of Virginia—County of Page, to-wit:

"In the County Court of Page county. The jurors of the Commonwealth of Virginia in and for the county of Page, and now attending the said court at its November term, 1895, upon their oaths present that Albin N. Kibler heretofore, to-wit:·on the 5th day of November, in the year 1895, in the said county of Page, in and upon one Willis D. Kibler, then and there being, did feloniously, wilfully and of his malice aforethought, make an assault, and that the said Albin N. Kibler a certain gun, then and there charged with gunpowder and shot, which said gun he, the said Albin N. Kibler, in his hand then and there had and held, then and there feloniously, wilfully and of his malice aforethought, did discharge and shoot off, at, against and upon the said Willis D. Kibler, and that the said Albin N. Kibler, with the shot aforesaid, out of the gun by the said Albin N. Kibler discharged and shot off as aforesaid, then and there feloniously, wilfully and of his malice aforethought, did strike, penetrate and wound the said Willis D. Kibler in and upon the left side of the face of him, the said Willis D. Kibler, giving to him the said Willis D. Kibler, then and there, with the shot aforesaid, so as aforesaid

discharged and shot off out of the gun aforesaid, by the said Albin N. Kibler in and upon the left side of the face of him, the said Willis D. Kibler, one mortal wound, of which said mortal wound he the said Willis D. Kibler then and there instantly died; and so the jurors aforesaid, upon their oaths aforesaid, do say that the said Albin N. Kibler, him, the said Willis D. Kibler in the manner and by the means aforesaid, feloniously, wilfully, and of his malice aforethought, did kill and murder against the peace and dignity of the Commonwealth of Virginia.

"And the jurors aforesaid upon their oaths aforesaid do further present that the said Albin N. Kbiler heretofore, to-wit: on the 5th day of November, in the year 1895, in and upon the said Willis D. Kibler, in the said county of Page, did feloniously, wilfully, and of his malice aforethought make an assault, and that the said Albin N. Kibler, with a certain axe then and there held by the said Albin N. Kibler, whether held in his right or left or in both hands being unknown to the jury the said Willis D. Kibler in and upon the left side of the head of him the said Willis D. Kibler then and there feloniously, wilfully, and of his malice aforethought, did strike, giving to the said Willis D. Kibler, then and there, with the axe aforesaid in and upon the left side of the head of him the said Willis D. Kibler, one mortal wound, of which said mortal wound he the said Willis D. Kibler, then and there instantly died, and so the jurors aforesaid upon their oaths aforesaid, do say, that the said Albin N. Kibler, him, the said Willis D. Kibler in the manner and form aforesaid, and by the means aforesaid, feloniously, wilfully, and of his malice aforethought did kill and murder against the peace and dignity of the Commonwealth of Virginia.

"And the jurors aforesaid upon their oaths aforesaid do further present that Albin N. Kibler, heretofore to-wit: on the 5th day of November, 1895, in the said county, in and

upon Willis D. Kibler, then and there being, feloniously, wilfully, and of his malice aforethought, did make an assault.

"And that the said Albin N. Kibler, with a certain knife then and there held by him, the said Albin N. Kibler, whether held in his right hand or in his left hand, or in both hands being unknown to the jury, in and upon the throat of him, the said Willis D. Kibler, then and there feloniously, wilfully, and of his malice aforethought, did strike and thrust, giving to the said Willis D. Kibler then and there with the knife aforesaid in and upon the throat of him the said Willis D. Kibler one mortal wound, of which said mortal wound he the said Willis D. Kibler then and there instantly died.

"And so the jurors aforesaid upon their oaths aforesaid, do say that the said Albin N. Kibler, him, the said Willis D. Kibler, in the manner and form aforesaid feloniously, wilfully, and of his malice aforethought, did kill and murder against the peace and dignity of the Commonwealth of Virginia.

"And the jurors aforesaid upon their oath aforesaid do further present that Albin N. Kibler, heretofore, to-wit: on the 5th day of November, 1895, in the said county, in and upon Willis D. Kibler, then and there being, feloniously, wilfully, and of his malice aforethought did make an assault: and that the said Albin N. Kibler by means and instruments unknown to the jury, in and upon the head, face and throat of him the said Willis D. Kibler, did, feloniously, wilfully and of his malice aforethought, inflict three mortal wounds of which said mortal wounds, he the said Willis D. Kibler then and there instantly died.    And so the jurors aforesaid upon their oaths aforesaid do say that the said Albin N. Kibler then and there, in the manner and form aforesaid, him, the said Willis D. Kibler, feloniously, wilfully, and of his malice aforethought, did kill and murder against the peace and dignity of the Commonwealth of Virginia."

"Upon the evidence of Lewis Chrisman, W. M. Rosser,

Cyrus, Dixen, J. D. Ruffin, Jos. J. Williams, L. H. Kibler and W. L. Hudson.

"Endorsement: 'Indictment for a felony.'

"A true bill.

"J. J. POUND, *Foreman.*"

The opinion states the case.

*Marshall McCormick*, for the plaintiff in error.

*Attorney-General R. Taylor Scott*, and *R. S. Parks*, for the Commonwealth.

KEITH, P., delivered the opinion of the court.

Albin N. Kibler was indicted at the November term, 1895, of the County Court of Page county for the murder of his uncle, Willis D. Kibler. At the April term, 1896, he was tried, found guilty of murder in the first degree, and sentenced to be hanged. During the progress of his trial he took sundry exceptions to the rulings of the court and presented a petition for a writ of error to the Circuit Court of Page county. The writ was granted; but the judgment of the County Court was subsequently affirmed, and thereupon Kibler obtained a writ of error from one of the judges of this court.

The first question before us arises upon a demurrer to the indictment. We have examined the indictment and each count thereof, and find it free from any ground of criticism.

The first count charges that the murder was committed with a gun, charged with gunpowder and shot, which, it is alleged, the plaintiff in error feloniously, wilfully, and with malice aforethought, did discharge and shoot off against and upon Willis D. Kibler, inflicting a mortal wound, of which he then and there died.

The second count charges that the killing was done with an axe, feloniously, wilfully, and with malice aforethought; and

The third count, that it was done with a knife, by cutting

the throat of Willis D. Kibler, feloniously, wilfully, and with malice aforethought.

The indictment and each count thereof is, in all respects, not only substantially but technically correct, and the demurrer was properly overruled.

While upon the subject of the indictment, however, a point made by counsel for the prisoner and relied upon in arrest of judgment may with propriety be disposed of.

It is the common law indictment for murder. It does not charge specially the ingredients of murder in the first degree as distinguished from murder in the second degree, and the contention is that such an indictment will not support a verdict of murder in the first degree. This question was presented to the General Court in the case of *Miller* v. *Commonwealth*, reported in 1 Va. Cas. at page 310, and that court unanimously decided "that the indictment is not defective in not charging specially such facts as would show the offence to have been murder in the first degree." To the same effect see *Wicks* v. *Com.*, 2 Va. Cas. 387, and *Livingstone* v. *Com.*, 14 Gratt. 598.

In the case of *Thompson* v. *Com.*, 20 Gratt. 730, the court says: "It is not necessary, in consequence of the statute defining the different degrees of murder, and subjecting them to different punishments, to alter the form of indictments for murder in any respect, nor to charge specially such facts as would show the offence to be murder in the first degree."

If, therefore, any proposition of law can be considered as settled by decision and no longer open to debate, this is one of them.

The homicide was committed on the 5th day of November, 1895. The plaintiff in error was indicted at the succeeding November term, and was taken to the adjoining county of Warren and there confined in jail. At the December and January terms the case was continued upon the motion of the

attorney for the Commonwealth. At the February term the following order was entered:

"By agreement of counsel, this case is continued to the March term, 1896, of this court, the Commonwealth's attorney of Page county being absent and engaged in public service in the General Assembly of Virginia, now in session."

At the March term the following order was entered:

"This cause is continued until the 5th day of May, 1896, it being the 8th day of next term of the court, for the Commonwealth, the attorney for the commonwealth being physically unable to proceed with the case, and six witnesses who have been summoned for the prosecution failing to appear, and the importance of five of them being known to the Commonwealth's attorney, as stated by him in open court."

It thus appears that there were five continuances, and the prisoner, when led to the bar upon the day set for his trial, demanded his discharge because four terms of the County Court had passed since he was indicted and held for trial.

Sec. 4047 of the Code, as amended by Acts of Assembly 1893-4, p. 464, provides that "Every person against whom an indictment is found charging a felony, and held in any court for trial, shall be forever discharged from prosecution for the offence if there be three regular terms of the circuit, or four of the county, corporation or hustings courts, in which the case is pending, after he is so held without a trial, unless the failure to try him was caused by his insanity, or by the witnesses for the Commonwealth being enticed or kept away, or prevented from attending by sickness or inevitable accident, or by continuance granted on the motion of the accused, or by reason of his escaping from jail or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict, or where there be no court held at the regular term, or where there is court held, and for any reason it would be injudicious, in the opinion of the court, to have jurors and witnesses summoned to that term, which reason

shall be specially spread upon the records of the court; but the time during the pendency of any appeal in any appellate court shall not be included as applying to the provisions of this act."

Counsel insisted that the November term, at which the indictment was found, should be counted as one of the four terms contemplated by the section just quoted. This contention cannot be sustained. The indictment was found at the November term, and there must be four terms after he is so held, that is, after he has been indicted and is held for trial, which necessarily excludes the term at which the indictment is found; but this question is no longer an open one with us. See *Bell* v. *Com.*, 7 Gratt. 646; s. c. 8 Gratt. 600; *Glover* v. *Com.*, 86 Va. 387; *Davis* v. *Com.*, 89 Va. 133.

At the February term the case was continued by agreement of counsel, and because the attorney for the Commonwealth was engaged in public service as a member of the General Assembly of Virginia then in session. There are rights which the prisoner can waive neither by counsel nor in person. It is unnecessary to enumerate them. There are other rights which the prisoner may waive either in person or by counsel. They are the mere incidents connected with the conduct of his trial; the prisoner having the right to be represented by counsel, that right carries with it the authority of counsel to represent the prisoner and to bind him by his acts with respect to the incidents arising in the conduct and trial of the cause. The agreement of counsel, and the absence of the attorney for the Commonwealth, are causes for continuance which we would not feel justified in holding insufficient, there being nothing in the record to show that the prisoner was prejudiced by it, but the idea that he could thereby be prejudiced being negatived by the fact that it was not resisted, but assented to by his counsel.

The November and February terms being excluded, it is unnecessary to consider the effect of the order of continuance

Opinion.

entered at the March term, and upon it we express no opinion.

We are of opinion, therefore, that four terms of the County Court since the prisoner was indicted and held for trial had not passed under circumstances which entitled him to his discharge.

It is assigned as error that the prisoner was never present in court at any of the terms at which the case was continued; that all the continuances were taken while he was confined in the jail of Warren county, and that therefore these continuances were erroneous and wrongful as to him, and the four terms should be counted in his favor. This position is also untenable. A case may properly be continued in the absence of the prisoner before his arraignment, and in this case the arraignment did not take place until the term at which he was tried. See *Boswell's Case*, 20 Gratt. 600.

As to the effect of a continuance in the absence of the prisoner after arraignment the facts of this case do not call for an adjudication, and we content ourselves with reference to what was said upon the subject in *Benton* v. *Commonwealth*, 91 Va. 794.

During the progress of the trial Miley Riley was asked: "Did you not state to John P. Mauch on yesterday in Luray that on the morning after you put Newton Kibler across the river (that being the 5th of November last) Newton Kibler told you that he and his uncle Willis Kibler had had a big fuss on the Friday or Saturday previous, or words to that effect?" To this question the witness replied: "I didn't say fuss. I said he told me they had a little difference. Those are the words I said to Mr. Mauch." The prisoner asked to have this question and answer stricken out because Mauch was not put upon the stand to impeach Riley. It is very likely that the object of the prosecuting attorney in propounding the question to Riley was to lay the foundation for impeaching him, he being a witness for the defence, by the introduction of Mauch; but Riley's answer is in itself admissible evidence.

In it he gives what the prisoner had said to him, ''that he and his uncle had had a little difference.'' With that answer proving a statement made by the prisoner upon the morning of the homicide, and which was admissible in evidence for what it was worth, the attorney for the Commonwealth was content, and there was no error in refusing to strike out the question under the circumstances.

There are a number of other exceptions in the record based upon conditions not likely to arise in a subsequent trial, and upon which it is therefore unnecessary for us to pass, and upon which we express no opinion.

There is a statement in the record that objections had been noted during the progress of the trial, and a stipulation entered into between counsel for the Commonwealth and the accused by virtue of which these objections thus noted might be taken advantage of in this court as though presented in formal bills of exceptions. The proper practice with respect to bills of exceptions was stated by Judge Harrison in the case of *N. & W. R. R. Co.* v. *Shott*, 92 Va. 34, and to that practice we feel constrained to require that counsel shall conform. We cannot consent that the labor and responsibility shall be imposed upon us of searching through the record to discover the objection made in the trial court. It is the duty of counsel to present in bills of exceptions the issues upon which the judgment of the court is desired in all cases in which under our system such bills are necessary, and it then becomes our duty to consider and decide whether or not there is reversible error.

After the evidence was introduced a number of instructions were given by the court, all of which correctly state the law except the fourth instruction given at the instance of the attorney for the Commonwealth, which is as follows:

''The court instructs the jury that possession of the fruits of crime recently after its commission affords a strong and reasonable ground for the presumption that the party in whose

possession they are found was the real offender, unless he can account for such possession in some way consistently with his innocence. And in case of murder this particular fact of presumption commonly forms also a material element of evidence in connection with other facts proved in the case."

This instruction is erroneous. It is true that possession of the fruits of crime recently after its commission, where that possession is not satisfactorily explained, affords the presumption that the party in whose possession they are found was the offender; but this is not a presumption of law, but of fact. It is a deduction of fact to be drawn from the circumstances of the case, and standing alone constitutes a *prima facie* case which will warrant a conviction for larceny. A failure to account for the possesion, or an unreasonable account of it, or a false account of it, will strengthen the presumption, but it is for the jury under all the circumstances of the case to determine its value as evidence. The recency of possession and the reasonableness of the account are elements to be considered by the jury even in a case of larceny. Now, to take this proposition of law peculiarly applicable to larceny and incorporate it into an instruction in a case of homicide, was calculated to mislead the jury, and to prejudice the prisoner. Can it be said that the mere possession of the pocket-book of the deceased by the prisoner who lived under the same roof with him and constituted one of his family, would, standing alone though unexplained, create a strong and reasonable presumption that he committed the murder? If the instruction was prejudicial and misleading in that clause which we have above considered, it was not purged of its vice by the addition to it in which the court states that "in a case of murder this particular fact of presumption commonly forms also a material element of evidence in connection with other facts proved in the case." The weight and value of the fact in question was to be determined by the jury in connection with the other facts proved, and for the court to state that in

connection with other facts proved it constituted a material element of evidence was throwing the weight of its judgment as to its force and effect upon the issue presented to the jury into the scales against the prisoner. That the evidence with respect to the pocket-book and its contents was admissible there can be no doubt, and being admissible it was a circumstance to be considered by the jury in connection with all the other facts proved. They may have been of such a nature as to render the possession of the pocket book a material circumstance, or the attending circumstances may have been such as to deprive that particular fact of any significance. It was for the jury to say.

There was a motion in arrest of judgment, the grounds assigned for which have already been sufficiently considered.

There was a motion also to set aside the verdict as being contrary to the evidence. This exception we shall not consider, deeming it best under the circumstances not to intimate any opinion as to the sufficiency of the evidence to warrant a verdict.

For the error in the fourth instruction the judgment of the Circuit Court must be reversed, and this court will proceed to enter such judgment as the Circuit Court should have rendered.

*Reversed.*