# Staunton

## JEFF FLANARY v. COMMONWEALTH OF VIRGINIA.

September 5, 1945.

Record No. 2918.

Present, All the Justices.

The opinion states the case.

*Cecil D. Quillen, Hagan Bond, E. D. Vicars* and *A. G. Lively*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

An indictment, charging Jeff Flanary, Wilmer Whited and John W. Sturgill with murder of one Pete Hamilton, was returned March 27, 1937. The parties demanded a severance, and, on motion of the Commonwealth, the case was continued against each. accused. When the case against Flanary was called for trial on April 5, 1939, he filed a plea in bar and moved to dismiss on the ground that three regular terms of the circuit court had passed without trial since the indictment was returned, that the continuances were not made on his motion, and that they were not based on any of the exceptions set forth in Michie's Code 1942, sec. 4926.* The plea was rejected and the motion overruled. To this action a writ of error was awarded but later dismissed on the ground that it was prematurely granted. See *Sturgill v. Commonwealth,* 175 Va. 584, 585, 7 S. E. (2d) 141. On May 22, 1944, the case against Flanary was again called for trial, and he again moved to dismiss the prosecution against him on the grounds formerly stated. This

---

*"*Within what time an indictment for felony must be tried or accused be forever discharged.*—Every person against whom an indictment is found charging a felony and held in any court for trial, whether he be in custody or not, shall be forever discharged from prosecution for the offense, if there be three regular terms of the circuit or four of the corporation or hustings court in which the case is pending after he is so held without a trial, unless the failure to try him was caused by his insanity, or by reason of his confinement in a hospital for the insane for care and observation, or by the witnesses for the Commonwealth being enticed or kept away or prevented from attending by sickness or inevitable accident, or by continuance granted on the motion of the accused, or by reason of his escaping from jail or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict, or where there be no court held at the regular term, or where there is court held and for any reason it would be injudicious, in the opinion of the court, to have jurors and witnesses summoned for that term, which reason shall be specially spread upon the records of the court; but the time during the pendency of any appeal in any appellate court shall not be included as applying to the provisions of this section."

motion was overruled. The trial proceeded, and the jury found him guilty of murder in the second degree and fixed his punishment at 12 years in the State penitentiary, on which verdict judgment was pronounced. It is to that judgment this writ of error was awarded.

The accused contends that the trial court erred in its refusal to sustain his motion to dismiss the prosecution and discharge him because the trial was not had within the time stated in the statute.

It is conceded that the continuance on motion of the Commonwealth, made at the term at which the accused was indicted, is not to be counted as one of the three regular terms contemplated. *Kibler* v. *Commonwealth*, 94 Va. 804, 26 S. E. 858.

The record discloses that, at the August term, 1937, the case was continued on motion of the attorney for the Commonwealth; at the April term, 1938, the order entered reads: "This case is hereby continued;" and at the February term, 1939, the order entered reads: "This case is hereby continued generally."

These orders make a *prima facie* case for the accused. The Commonwealth recognized this fact and attempted to overcome the force and effect of the orders by introducing the parol testimony of three witnesses, two deputy clerks and the Commonwealth attorney of the county of Wise. The substance of the testimony of the two deputy clerks was their personal understanding or construction of the two orders according to local custom. This testimony was not enlightening, was irrelevant and was inadmissible.

The attorney for the Commonwealth testified that on two occasions—one just prior to the time the order was entered in April, 1938, and the other just prior to the time the order was entered in February, 1939—he, in response to an inquiry, said to one or both of the attorneys for the accused that he did not think the case would be tried at the April term or at the February term of the court. He did not state that the attorneys for the accused agreed to either of the continuances. He does state: "That was all that was said

at that time and I had no knowledge of how the orders were made. The defendants had not asked for trial at those terms of court and neither had the Commonwealth."

These facts narrow the issue to the question, whether an accused must take positive action by demanding a speedy trial within the time stated before he may invoke the provisions of the statute.

This court has stated in numerous cases (*Commonwealth* v. *Adcock*, 8 Gratt. (49 Va.) 661; *Brown* v. *Epps*, 91 Va. 726, 21 S. E. 119, 27 L. R. A. 676; *Nicholas* v. *Commonwealth*, 91 Va. 741, 21 S. E. 364; *Benton* v. *Commonwealth*, 91 Va. 782, 21 S. E. 495; *Kibler* v. *Commonwealth*, *supra*; *Wadley* v. *Commonwealth*, 98 Va. 803, 35 S. E. 452; *Butts* v. *Commonwealth*, 145 Va. 800, 133 S. E. 764) that the statute (Code, sec. 4926) is the interpretation by the legislature of what constitutes a "speedy trial," as that term is used in the Bill of Rights.

The facts in *Butts* v. *Commonwealth, supra*, were that the jury returned a verdict of guilty against the accused on the 12th day of February, 1923. A motion was promptly made to set aside the verdict and grant the accused a new trial, but this motion was not overruled until the 21st day of November, 1925, when judgment was entered on the verdict. In the opinion by Judge Burks, at page 807, it was said: "The statute gives the Commonwealth three regular terms of a circuit court after the accused is held for trial within which the Commonwealth may afford such trial. The term at which the indictment is found is excluded from the calculation (*Kibler* v. *Commonwealth*), and after this the Commonwealth has three regular terms of the circuit court, at any one of which the accused may be tried without offering any excuse for delay; but after the expiration of these three terms, unless the Commonwealth shall bring herself within the exceptions mentioned in section 4926 the statute provides that the accused '*shall be forever discharged from prosecution for the offense.*' In other words, it is a legislative pardon for the offense if the trial is not had within the time prescribed by the statute; but the accused never

availed himself of the provision made for his benefit. * * *
and now asserts his right to a discharge from prosecution for
the first time in this court." In other words, it was held
that the accused had waived his right to take advantage of
the statute by not raising the question in the lower court.

The facts in the present case are quite different. The
accused, both by an oral motion and a plea in bar, raised the
issue, but his plea was rejected and his motion overruled on
the ground that the accused had waived his right by failure
to demand a trial within the time specified.

The right of a speedy trial to a person charged with a
criminal offense is guaranteed by the Sixth Amendment to
the Federal Constitution and by the Constitutions of most
of the States. The legislative meaning of the term "speedy
trial" has been incorporated in statutes of the various states.
The language of these statutes differs and hence different
interpretations of the legislative intent are found in the vari-
ous state reports. Many of these are annotated in 129 A.
L. R. 572. However, these opinions are not controlling be-
cause this court is bound by the meaning of the language
used in section 4926 and not by statements of other courts
interpreting the language of their statutes.

It was held in the *Kibler Case, supra,* that the accused had
waived his right to be tried within the term specified be-
cause the order entered at one of the three regular terms
showed that the case was continued by the express consent
of his counsel. We have found no case in Virginia which
holds that the accused waives his right simply by failing to
oppose a motion for a continuance made by the Common-
wealth. Indeed, it is conceded by the Attorney General
that the regular August, 1937, term of court should be
counted. The order continuing the case simply states: "On
motion of the attorney for the Commonwealth, the case is
continued." It does not appear, nor is it contended, that the
accused objected to the motion.

The pertinent evidence regarding the other two con-
tinuances is that the Commonwealth's attorney told the at-
torneys for the accused that he did not think the case would

be tried at either of the two terms mentioned. The attorneys for the accused made no agreement. They simply did not reply to his statement. In other words, the attorneys for the accused and the accused remained passive. They did not oppose the motion that was made for a continuance, nor did they object or protest when the Commonwealth's attorney stated that he did not think the case would be tried.

When the accused established the fact that three regular terms of the Circuit Court of Wise county had been held without trial of this case pending therein, the burden was on the Commonwealth to show that the failure to try him was due to one of the following causes: (1) His insanity, (2) his confinement in a hospital for the insane for care and observation, (3) the witnesses for the Commonwealth being enticed or kept away or prevented from attending by sickness or inevitable accident, (4) *continuance granted on the motion of the accused*, (5) his escaping from jail or failing to appear according to his recognizance, (6) the inability of the jury to agree on their verdict, (7) where no court was held at one of the regular terms, (8) where there is court held and for any reason it would be injudicious, in the opinion of the court, to have jurors and witnesses summoned for that term, which reason shall be specially spread upon the records of the court, or (9) the case had been tried and was pending in the appellate court.

It will be noted that exceptions numbered 3, 4, 5 and 9 are grounded on some positive act of the accused tending to delay the trial. The other exceptions are based upon the health of the accused, the health of the witnesses or some fortuitous circumstances which impel the trial court to postpone the trial. There is no evidence tending to show that either the accused or his counsel was guilty of fraud or trickery. Proof that the accused remained silent or that he did not demand a trial is not sufficient to overcome the *prima facie* case made by the accused.

It is the duty of officers charged with the responsibility of enforcing the criminal laws of the Commonwealth to prepare for and obtain a trial of an accused within the

three regular terms of court specified. If this is impractical, then the reasons for delays or continuances of the case should be spread upon the record and should not rest upon casual or indefinite conversations between counsel for the respective parties.

A guilty person cannot be deprived legally of his life or liberty unless he has been duly tried and convicted according to law. A party charged with the commission of a felony, whether innocent or guilty, has the right to challenge the sufficiency of the indictment, the composition and qualification of jurors. These and similar questions are fundamental to the orderly enforcement of the criminal law. They may be, and frequently are, referred to as mere technicalities. They are procedures prescribed by law for the orderly trials of a person accused of crime and must be substantially complied with before a legal conviction can be obtained. The question to be determined is not whether this accused is guilty or innocent. Any discussion of that question tends to becloud the real issue, which is the meaning of the language used by the legislature in prescribing within what time an accused shall be tried. This language, stripped of all surplusage, is: "Every person against whom an indictment is found charging a felony * * * shall be forever discharged from prosecution for the offense, if there be three regular terms of the circuit * * * court in which the case is pending after he is so held without a trial, unless the failure to try him was caused by * * * continuance granted on the motion of the accused."

█ If the legislature had intended for the silence of the accused, or his failure to object to a continuance of his case, to be a waiver of his right, it could, and doubtless would, have used appropriate language to convey that intention. If the language used is to be given its usual and ordinary construction, it is impossible to hold that the words, "continuance granted on the motion of the accused," convey the same meaning as "silence," or "the accused must demand a trial" before three terms of the circuit court have elapsed between the return of the indictment and his trial.

██ It is the duty of the court to construe the language of the statute and not to pass upon its wisdom. To read into the statute a meaning which is contrary to the ordinary definition of the words used is judicial legislation and not judicial construction. If the statute, as written, permits guilty parties to escape justice, this fact should be brought to the attention of the General Assembly which alone has the authority to legislate.

██ The meaning of the words used would be nullified if the court held that mere silence on the part of the accused had the same force and effect as the motion made by him to continue the case. The judgment of the trial court is reversed, the verdict of the jury set aside and the prosecution dismissed.

*Reversed and dismissed.*

HOLT, EGGLESTON and SPRATLEY, JJ., dissenting.

SPRATLEY, J., dissenting.

Mr. Justice Holt, Mr. Justice Eggleston and I think that the judgment of the trial court should be sustained. The opinion of the majority seems to us to be a sacrifice of justice to technicality. It sets a precedent for abuse which does not appear to be justified by reason or policy. Its result is to permit a peace officer, sworn to enforce the law, to outwit the law, and escape punishment for an offense which three juries have held to be murder.

Constitutional and statutory provisions for a "speedy trial" secure that right to a defendant, but they were never intended to defeat the demands of public justice. The prime consideration of such provisions is justice both to the accused and the public. They were intended to promote prompt trials, not to furnish an escape from trial through deceit or trickery.

Usually, a "speedy trial" is desired by an innocent defendant. It is commonplace, however, for a guilty defendant to delay his trial as long as possible in the hope that witnesses

against him may disappear or that evidence be weakened through the frailty of human memory.

All of the authorities agree that a statute such as Virginia Code, 1942 (Michie), section 4926, designed to aid in the constitutional guaranty of a "speedy trial" for one accused of crime, may be waived *and is waived* where the accused *consents* to a continuance or a postponement. 129 A. L. R. 572, Annotation: "Waiver or loss of defendant's right to speedy trial in criminal cases;" 14 Am. Jur., Criminal Law, section 138, 22 C. J. S., Criminal Law, section 477.

The above principle was laid down by Judge Keith (afterwards President Keith), in *Kibler* v. *Commonwealth,* 94 Va. 804, 26 S. E. 858, was reaffirmed by Judge Burks in *Butts* v. *Commonwealth,* 145 Va. 800, 133 S. E. 764, and is recognized in the majority opinion.

Some of the authorities go further and hold that there is a waiver where the accused does not demand a prompt trial or object to a postponement. But we do not have to go that far here, because there was more than mere passive silence in this case, there was actual consent.

In order to get a clear view of the circumstances attending the issue determined by the majority opinion, it seems proper to set out more fully certain facts of the case and the proceedings attending the indictment and trial of the plaintiff in error.

In the majority and dissenting opinion of *Whited* v. *Commonwealth,* 174 Va. 528, 6 S. E. (2d) 647, will be found extended excerpts from the evidence in that case, which do not differ in essential details from that in this. It is sufficient to say that the evidence on behalf of the Commonwealth amply supports the verdict returned by the jury and approved by the trial court.

As a background the following facts may be recited:

Jeff Flanary, Wilmer Whited and John W. Sturgill, all deputy sheriffs of Scott county, were informed of the operation of an illicit distillery. The three officers thereupon went out together to locate the distillery and its operators. They found two or three abandoned stills and

some paraphernalia for the making of whiskey. Subsequently, on a highway at a place some distance from the location of the stills they came upon Pete Hamilton, his mother, Sarah Hamilton, Cloyd Laney and the latter's wife and little baby. The evidence is conflicting as to what first took place upon this contact, but almost immediately thereafter Pete Hamilton and the men with him started running away from the scene. While they were in the act of escaping the officers shot at them and Pete Hamilton was struck in the back of the neck and killed.

The three officers were on March 22, 1937, jointly indicted in Wise county for his murder. No proceedings were had on this indictment at the March, 1937, term nor for several terms thereafter, by reason of a dispute as to whether the homicide occurred in Scott or Wise county.

It was not until March, 1938, that it was determined that Wise county had jurisdiction. The case against the three officers was called for trial in April, 1938, when the defendants elected to be tried separately. Thereupon the Commonwealth elected to try Whited first. Upon his first trial in 1938, the jury were unable to agree upon a verdict. Upon his second trial, in 1939, a jury found him guilty and fixed his punishment at 20 years in the penitentiary. That verdict being sustained by the trial court, he appealed to this court. His conviction was by this court reversed on January 10, 1940, due to the giving of erroneous instructions by the trial court. *Whited* v. *Commonwealth, supra*. His case was remanded for a new trial and upon that trial he received a sentence of 12 years. This verdict was set aside by the trial court on the ground that there had been a separation of the jury during the trial. Whited died in 1943 before he could again be brought to trial.

In April, 1939, Flanary moved for a dismissal of the indictment against him on the ground that three terms of court had passed since his indictment without trial. V. C. 1942, (Michie), section 4926. The motion being overruled, a writ of error was obtained from this court. We dismissed

the writ as having been improvidently awarded. *Sturgill* v. *Commonwealth*, 175 Va. 584, 7 S. E. (2d) 141.

When the present case was called for trial Flanary again moved the trial court to dismiss the prosecution against him upon the same ground.

A list of the terms of court in question, the continuances and the proceedings relating thereto appear as follows:

March, 1937—Indictment returned and the case continued "on motion of the Attorney for the Commonwealth."

August, 1937—"On motion of the attorney for the Commonwealth, this case is continued."

November, 1937—"On motion of the defendants, by their attorneys, this case is continued for the defendants."

April, 1938—The dispute as to the location of the venue having been settled in favor of Wise county, the case was called for trial and the defendants elected to be tried separately. The trial of Whited began. As to Flanary and Sturgill the record shows "This case is hereby continued."

August, 1938—"On motion of the defendants, by counsel, this case is hereby continued for the defendants."

February, 1939—"This case is hereby continued generally."

It is conceded that the March term did not count, it being the term at which the indictment was returned. *Kibler* v. *Commonwealth*, 94 Va. 804, 26 S. E. 858. It is further conceded that the November, 1937, and August, 1938, terms are not to be counted in favor of the plaintiff in error. The Commonwealth concedes that the August, 1937, continuance is to be counted against it.

The controlling question is whether both the April, 1938, and February, 1939, terms should be counted in favor of the accused. These two orders of continuance failed, it is true, to state any specific reason therefor, but this was sufficiently explained, it seems to us, by evidence of a local custom. The evidence of the clerk of the court and the Commonwealth's attorney relative thereto was as follows:

"Q. 17. What is the expression 'continued generally' used to mean in the orders of the Circuit Court of Wise

county, and in the order that you have there of February 2, 1939?

"A. (By Clerk Fuller) It is used where cases are continued by agreement of counsel and where the continuance is not to prejudice the rights of either party in civil cases to recover costs."

And by the Commonwealth's attorney:

"When the two orders; namely, that one entered on April 9, 1938, and the one on February 2, 1939, were entered, or before they were entered, at the time that we had completed the trial of Wilmer Whited, under the severance asked by counsel for the defendants, either Judge Bond or Mr. Vicars, I am not sure which one on the first occasion, and I think both of them on the last occasion, came to me and said:

" 'There will be no trial of the other two cases at this term, will there?', or words to that effect, and I told them I did not think so because it was not the custom of the Court to summon additional jurors, where we had a severance and tried one under the indictment. That was all that was said at that time, and I had no knowledge of how the orders were made.

"The defendant had not asked for trial at those terms of Court and neither had the Commonwealth.

"Since these cases have been pending, the Commonwealth's witnesses have been summoned to Court only three times. All the other continuances were made really by agreement of counsel, and I believe that the records will show that defendants' witnesses were summoned the same three times that the Commonwealth's witnesses were. The continuances were entered after conference between myself and counsel for the defendants. * * * ."

This testimony is uncontradicted. The question asked the Commonwealth's attorney by counsel for the defendant was, in effect, a request for a continuance.

We know through common experience and under settled rules of law that consent or acquiescence can be as effectively given by non-action as well as by action, although

proof of affirmation by non-action may be more difficult. Where the implication of consent is as plain as it is in this case little or no difficulty is encountered.

The statute gives an accused the personal right to demand a "speedy trial," but it does not require that he exercise that right. It does not provide that upon the mere delay of his trial, in the absence of an assertion of his right to a "speedy trial" he shall be entitled to a discharge from a trial of the offense charged against him.

Criticism of the law's delay is often just, but in our zeal to correct the evil we should not advance to the point where the ends of public justice may be wholly defeated. Especially is this true where no prejudice has been occasioned the rights of an accused and he has invited the delay of which he subsequently complains. The delay which does not constitute a wrong against him should not be permitted to operate as a wrong against justice.

It is conceded in the majority opinion that the orders of continuance were not of themselves conclusive, but merely made out a *prima facie* case for the accused. Referring to the testimony of clerk Fuller, that opinion merely says "This testimony was not enlightening, was irrelevant, and inadmissible." The opinion does not say why this testimony is inadmissible, but the inference is that it varies or contradicts the order. This is unsound. It does not vary or contradict the order. It merely explains language which is otherwise ambiguous. Since it was ambiguous, it falls within the domain of construction and necessarily in its construction evidence to establish facts under which the continuance was had, was both competent and proper.

The evidence of the clerk and of the Commonwealth's attorney clearly shows that the defendant consented to the continuances in question. The clerk said that the expression "continued generally," as used by him, signified that the continuance was by agreement of counsel. The Commonwealth's attorney testified that all of the continuances, where the orders were silent as to the circumstances, "were made really by agreement of counsel." Uncontradicted, this

testimony shows actual consent. It discloses more than mere passive silence. Under the circumstances, a failure to speak, at least, implies an agreement was made by counsel.

The effect of the court's opinion amounts to this: If an accused in person were to say to the court that he was not prepared for trial at a current term and desired his case to go over to another term, and a continuance was accordingly granted, and entered by the clerk of the court on the court's records with the recitation "case continued," the facts could not be shown. This position we think is untenable.

It is not necessary that there be a formal waiver of the right to a "speedy trial." It is necessarily implied where, after a conference between counsel for the Commonwealth and counsel for the defendant, a continuance is agreed upon by them and granted by the court without protest. The realities here reflect the full acquiescence and consent of the plaintiff in error, his ready acceptance of the continuance and the waiver of his right to an immediate trial.

The law applicable to the facts shown by the record is fairly well settled in Virginia.

In *Brown* v. *Epps*, 91 Va. 726, 21 S. E. 119, 27 L. R. A. 676, it is said: "That a prisoner may waive many of his constitutional rights is beyond a doubt."

The constitutional right to a speedy trial given to the accused by section 8 of our Constitution "may be claimed, or it may be waived." *Butts* v. *Commonwealth*, 145 Va. 800, 133 S. E. 764.

This statute came under construction in *Kibler* v. *Commonwealth*, 94 Va. 804, 26 S. E. 858. Martin P. Burks was then State Reporter. Headnote No. 3 reads:

"Before arraignment the prisoner need not be present when his case is continued. Upon the facts of this case the consent of counsel for the prisoner to a continuance of his case is binding on the prisoner, though he was not personally present".

Keith, P., said:

"There are rights which the prisoner can waive neither by counsel nor in person. It is unnecessary to enumerate them.

There are other rights which the prisoner may waive either in person or by counsel. They are the mere incidents connected with the conduct of his trial; the prisoner having the right to be represented by counsel, that right carries with it the authority of counsel to represent the prisoner and to bind him by his acts with respect to the incidents arising in the conduct and trial of the cause. The agreement of counsel, and the absence of the attorney for the Commonwealth, are causes for continuance which we would not feel justified in holding insufficient, there being nothing in the record to show that the prisoner was prejudiced by it, but the idea that he could thereby be prejudiced being negatived by the fact that it was not resisted, but assented to by his counsel."

The majority opinion concedes that in the *Kibler Case, supra*, the accused was held to have waived his right to be tried within the term specified where the order showed that his case was continued by the express consent of his counsel. As to the effect of such action by counsel for the accused, Judge Burks, after citing and approving the foregoing quotation from *Brown* v. *Epps, supra*, said in *Butts* v. *Commonwealth, supra*:

"In *Kibler* v. *Commonwealth*, 94 Va. 804, 811, 26 S. E. 858, 859, construing this statute, it is said: 'There are rights which the prisoner can waive neither by counsel nor in person. There are other rights which the prisoner can waive either in person or by counsel. They are the mere incidents connected with the trial,' and these include consent to a continuance which would prevent the operation of section 4926 of the Code.

"In *State* v. *Kellison*, 56 W. Va. 690, 692, 47 S. E. 166, it is plainly intimated, if not decided, that the constitutional privilege of a 'speedy trial' must be claimed or else it will be deemed to have been waived, and that the claim comes too late after trial and conviction.

"In 8 R. C. L. 74, it is said: 'The right of the accused to a discharge for the failure of the prosecution to put him on trial within the required time may be waived by his own conduct. If he does not make a demand for a trial * * *

or if he does not make some kind of an effort to secure a speedy trial, he will not be in a position to demand a discharge because of delay in the prosecution.' To the same effect, see note, 85 Am. St. Rep. 197; *People* v. *Hawkins,* 127 Cal. 372, 59 P. 697.

"In a note to *Head* v. *State,* 9 Okla. Cr. 356, 131 P. 937, 44 L. R. A. (N. S.) 871, a number of cases are cited for the proposition that 'one accused of crime will not be entitled to a discharge because of delay in prosecution, unless it appears that he has either made a demand for a trial, or resisted a continuance of the case, or at least made some other effort to secure a speedy trial.' "

This is the rule elsewhere generally applied.

In *Sullivan* v. *State* (March 13, 1939), 215 Ind. 343, 19 N. E. (2d) 739, the court said:

"A defendant must show that the delay complained of was caused by the state and not by him, and that it was not had upon his request or upon his agreement. *McLaughlin* v. *State* (1934), 207 Ind. 484, 192 N. E. 753, 97 A. L. R. 800; *Sprague* v. *State* (1932), 203 Ind. 581, 181 N. E. 507; *Alyea* v. *State* (1926), 198 Ind. 364, 152 N. E. 801, 153 N. E. 775. While the record recites: 'Comes now the State of Indiana by its Prosecuting Attorney and this cause is now continued,' it does not show at whose request the continuance was had. The testimony that it was at the request of the defendant is not disputed and must be considered conclusive."

In *Pines* v. *District Court* (July 27, 1943), 233 Iowa 1284, 10 N. W. (2d) 574, the court said:

"It is our conclusion that the petitioner not having resisted postponement, or demanded a trial, or made any effort to bring his case on for trial, waived any right to a dismissal under the provisions of section 14024. In so holding we are not reading anything into the section which was not fairly and reasonably within the intention of those who enacted it. Our decision herein is in accord with the uniform holding of the courts generally."

To the same effect, see *State* v. *Pierson* (August 17, 1938), 343 Mo. 841, 123 S. W. (2d) 149; 14 Am. Jur., p. 863.

In 14 Am. Jur., Criminal Law, section 138, it is said: "The right of the accused to a discharge for the failure of the prosecution to put him on trial within the required time may be waived by his own conduct, even in capital cases. He must claim his right if he wishes its protection. Silence on his part cannot be construed as a demand for trial. If he does not make a demand for trial or resist a continuance of the case, or if he consents to continuances, goes to trial without objecting that the time has passed, or fails to make some kind of an effort to secure a speedy trial, he will not be in a position to demand a discharge because of the delay in prosecution."

Also in 22 C. J. S., Criminal Law, section 469, we find: "The accused must demand a trial or take other affirmative action to obtain a trial to be entitled to a discharge for delay. The demand must be made in the proper manner. A demand is waived by any conduct evidencing an intention not to insist on it."

The important points to be remembered are that the consent of the accused to a continuance is a waiver of the provision of the statute under our decisions, and that the testimony shows, without contradiction, that the accused, through his counsel sought a continuance and, in any event, impliedly, if not expressly, consented to it.

The several verdicts of separate juries, approved by the trial court, settle the question of the guilt of the defendant, if we give effect to established rules. He cannot escape punishment unless some technical loophole be found in the proceedings.

The opinion in *Gilland* v. *Commonwealth*, post, p. 223, 35 S. E. (2d) 130, this day decided, forcibly supports our position. In that case, Chief Justice Campbell, repeating his language in *Clarke* v. *Commonwealth*, 159 Va. 908, 166 S. E. 541, said: " * * * , when the circumstances proved are of such a character as to warrant a verdict of guilty,

*neither courts nor juries* should be alert to discover technical loopholes through which the guilty can escape merited punishment."

What we have said being true, and the defendant having had a fair and impartial trial on the merits, it would indeed be an anomaly to hold that his rights have been violated. As we see it, the opinion of the majority, opposed by the overwhelming weight of authority and the logic of the circumstances, has the effect of allowing an accused to escape the just consequences of his crime.