# 𝕽𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## Jonathan Fowlkes v. Commonwealth of Virginia

January 13, 1978.

Record No. 770725.

Present: All the Justices.

*Robert K. Caudle, Jr. (Caudle & Shapiro,* on brief), for plaintiff in error.

*Thomas D. Bagwell, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

POFF, J., delivered the opinion of the Court.

The question raised by this appeal is whether defendant was denied his constitutional right to a speedy trial. U. S. CONST. amend. VI; [1] Va. CONST. art. I, § 8.[2] Since the challenged delay preceded the preliminary hearing, the right defined by Code § 19.2-243 (Repl. Vol. 1975) is not at issue.

Tried by the court without a jury, Jonathan Fowlkes was convicted of robbery and sentenced, by order entered February 1, 1977, to 20 years in the penitentiary with 10 years suspended. At trial, the two principal Commonwealth witnesses were the

---

[1] The Sixth Amendment guarantee of a speedy trial, a "fundamental" right, applies to the states. *Klopfer* v. *North Carolina,* 386 U.S. 213 (1967).

[2] "[I]n all capital or criminal prosecutions a man hath a right . . . to a speedy trial. . . ." Va. Declaration of Rights, 1776, § 8.

It seems clear that this declaration was one of the roots of the Sixth Amendment. *See* R. Rutland, The Birth of the Bill of Rights 1776-1791, at 202 (1955); F. Heller, The Sixth Amendment to the Constitution of the United States (1951); E. Dumbauld, The Bill of Rights and What It Means Today, 171 (1957).

victim of the robbery and the investigating officer, both of whom also testified at a pre-trial hearing on defendant's motion to dismiss the indictment for want of a speedy trial. As developed at that hearing, the chronology of events relevant to the issue on appeal is as follows:

| Dates set for preliminary hearing | Other dates | Events |
|---|---|---|
| | 7/22/74 | Crime committed |
| | 11/14/74 | Defendant arrested and released on bond |
| 12/13/74 | | Continuance |
| 1/17/75 | | Continuance |
| | 1/20/75 to 1/30/75 | Victim hospitalized for observation |
| | 2/26/75 to 3/8/75 | Victim hospitalized for operation |
| 3/6/75 | | "General continuance" |
| | 11/10/75 to 11/16/75 | Officer hospitalized for injuries |
| | 2/ /76 | Defendant incarcerated on traffic conviction |
| | 3/17/76 to 3/31/76 | Victim hospitalized for second operation |
| 5/7/76 | | Continuance |
| 6/11/76 | | Continuance |
| 6/25/76 | | Continuance |
| 8/5/76 | | Continuance |
| 9/3/76 | | Continuance |
| | 9/10/76 | Preliminary hearing conducted |
| | 2/1/77 | Defendant convicted |

■ All eight continuances were granted on motion of the Commonwealth. On each occasion, defendant's counsel was ready for trial and registered an objection to the motion. Defendant's formal motion to dismiss, made after the preliminary hearing, was overruled with no grounds assigned.

"We . . . identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right [to a speedy trial]. . . : Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* v. *Wingo*, 407 U.S. 514, 530 (1972).

### I. *Length of Delay*

The first factor does not include the four months' delay between the date of the crime and the date defendant was arrested; a suspect becomes an "accused" within the intendment of the Sixth Amendment when he is placed under arrest. *Dillingham* v. *United States*, 423 U.S. 64 (1975). Here, the delay between arrest and the preliminary hearing was approximately 22 months; thereafter, nearly five more months expired before the date of trial. When the delay is so protracted as to be "presumptively prejudicial", the first factor becomes a "triggering mechanism" which necessitates "inquiry into the other factors that go into the balance." *Barker* v. *Wingo*, 407 U.S. at 530. The Commonwealth concedes on brief that the delay "is sufficient to justify concern and inquiry".

### II. *Reason for Delay*

■ Because, in the orderly administration of justice, some delay is unavoidable and some essential to due process, courts must inquire into the reasons for the delay. In some jurisdictions, the burden is upon the defendant to demonstrate the unreasonableness of the delay. *See, e.g., Schlinsky* v. *United States*, 379 F.2d 735, 737 (1st Cir.), *cert. denied*, 389 U.S. 920 (1967); *State* v. *Hollars*, 266 N.C. 45, 52, 145 S.E.2d 309, 314 (1965). But it is the prosecution which has the responsibility of vindicating society's interests in swift and certain justice;[3] it is the prosecution which has the duty of implementing the

---

[3] *See* **Part IV,** *infra.*

constitutional guarantee of a speedy trial; it is the prosecution which has ready access to the data concerning delay attributable to law enforcement personnel and court administrators; and when delay is attributable to the defendant, proof of that fact poses little problem for the prosecution. We believe, therefore, that when a defendant challenges the delay as unreasonable, the burden devolves upon the Commonwealth to show, first, what delay was attributable to the defendant and not to be counted against the Commonwealth and, second, what part of any delay attributable to the prosecution was justifiable. This rule accords with our holding in *Flanary* v. *Commonwealth*, 184 Va. 204, 210, 35 S.E.2d 135, 138 (1945), that the burden is on the Commonwealth to show that the delay proscribed by Code § 4926 (Michie, 1942) (now Code § 19.2-243) resulted from one of the causes excepted by the statute.

■ None of the delay in the case at bar was attributable to defendant. The reason for the first two of the eight continuances granted the Commonwealth was the Commonwealth's failure to summon its witnesses. The last five continuances were granted because the Commonwealth failed to bring defendant, incarcerated on a traffic conviction in another jurisdiction, before the court. On three of the five occasions, no order was issued; on another, the order was directed to the wrong jurisdiction; on yet another, the sheriff neglected to have defendant present when the case was called.

The general continuance, extending some 14 months, was granted upon the Commonwealth's information that the victim of the robbery was undergoing open-heart surgery. The victim testified that he had received an operation for "hiatus hernia" but had been released from the hospital two days after the general continuance was entered. Twelve months later, the victim was hospitalized for 15 days for a gall bladder operation, but he was released more than a month before the date then fixed for the preliminary hearing. During the term of the general continuance, the investigating officer was hospitalized for injuries for a period of seven days. However, he testified that, following his release (which occurred nearly six months before the continuance expired), he was able to drive, read his notes, and testify.

In summary, the only continuance granted because a material witness was unavailable was the general continuance; that

witness became available a few days later; thereafter, both Commonwealth witnesses were available on each of the dates abandoned by the five continuances which followed.

The Commonwealth argues that the delays "caused by clerical errors and neglect in the Commonwealth's Attorney's office should be regarded as neutral reasons . . . and not be counted heavily against the Commonwealth."

Nothing in the record indicates that the Commonwealth intentionally delayed prosecution "to gain some tactical advantage over [defendant] or to harass [him]." *United States* v. *Marion*, 404 U.S. 307, 325 (1971). Yet, while simple negligence on the part of the Commonwealth may be a "more neutral reason" than deliberate procrastination, administrative derelictions "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker* v. *Wingo*, 407 U.S. at 531.

We are of opinion that the Commonwealth failed to carry its burden of showing justification for the delay resulting from its acts and omissions.

### III. *Assertion of the Right*

■ The third *Barker* factor "should be neutral", the Commonwealth argues, because defendant did not formally assert his right to a speedy trial "until after the preliminary hearing". Prior to the *Barker* decision, many federal courts of appeals applied the "demand-waiver" doctrine. So did most state courts. *See* Note, *The Lagging Right to a Speedy Trial*, 51 Va. L. Rev. 1587, 1601 *et seq.* (1965). In recognition of the fact that delay often serves the "tactical advantage" of defendants, that doctrine held that any delay preceding a formal demand for trial was waived and that time did not begin to run against the government until such demand was made. Observing that "presuming waiver of a fundamental right from inaction, is inconsistent with this Court's pronouncements on waiver of constitutional rights", *Barker* v. *Wingo*, 407 U.S. at 525, the *Barker* court expressly rejected the demand-waiver doctrine:

"We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to

assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* at 528.

As *Barker* noted, Virginia was one of eight states which had already renounced the "demand rule". 407 U.S. at 524, n. 21. We have held that if the provisions of Code § 19.2-243, which is conceptually and functionally related to the constitutional guarantee, are invoked when the case is called for trial, the statutory right is not waived, even though "the accused remained silent" and "did not demand a trial" earlier. *Flanary* v. *Commonwealth*, 184 Va. at 210, 35 S.E.2d at 138. Moreover, there is "no case in Virginia which holds that the accused waives his right simply by failing to oppose a motion for a continuance made by the Commonwealth." *Id.* at 209, 35 S.E.2d at 137.

If the demand-waiver doctrine is not applied as a limitation upon the exercise of the subordinate statutory right, it is reasonable to conclude that it would never be so applied to the superior constitutional right.[4] In this sense, *Flanary* foreshadowed *Barker* by nearly three decades.

The record shows that defendant objected to every continuance sought by the Commonwealth and that he made a timely claim of his constitutional right. On balance, we weigh the third *Barker* factor in defendant's favor.

## IV. *Prejudice*

■ We turn now to the fourth factor, "prejudice to the defendant".

Preliminarily, we observe that the prosecutor's duty to use due diligence in bringing an accused to trial extends not only to the defendant but also to society at large. The public has a substantial stake in speedy conviction of the guilty and prompt vindication of the innocent. When the defendant is in jail pending trial, the public must pay the institutional costs and, frequently, the living expenses of those dependent upon the defendant's earnings. When the defendant is released on bond,

---

[4] Our holding that waiver results when demand is not made "until after final judgment", was not addressed to the constitutional guarantee. *Brooks* v. *Peyton*, 210 Va. 318, 321, 171 S.E.2d 243, 246 (1969).

the public is exposed to the danger that he may "jump" bail and become a fugitive from justice or commit new crimes seeking money for his defense or attempting to influence or intimidate witnesses. The longer the delay continues, the greater the danger grows. Moreover, just as delay may prejudice the preparation and presentation of the defense, it may impair the case for the prosecution. Indeed, since the prosecution has the burden of proof, the loss of witnesses and the fading of memories due to delay may so prejudice the case as to destroy it altogether.

These considerations aside, we address the Commonwealth's point that defendant adduced no evidence to show that he was prejudiced by the delay. In support of the motion to dismiss, defendant's counsel represented to the trial court that the principal alibi witness could no longer remember the time and sequence of relevant events. True, defendant offered no evidence to that effect, but proof of what has been forgotten is seldom feasible. *Barker* v. *Wingo*, 407 U.S. at 532. Defendant's counsel also avowed that prison authorities had told defendant that, but for the pendency of the robbery charge, he could be "paroled" from his traffic sentence. Here again, no evidence was produced. However, the attorney for the Commonwealth was aware that defendant was in jail in another jurisdiction, and "no court should overlook the possible impact pending charges might have on [an incarcerated defendant's] prospects for parole and meaningful rehabilitation." *Moore* v. *Arizona*, 414 U.S. 25, 27 (1973).

There are 11 procedural guarantees in the Bill of Rights designed to ensure the reliability of the guilt-determination process; only due process and speedy trial have ever been held to require a showing of actual prejudice in order to establish a violation. *See* Notes, *The Right to a Speedy Trial*, 20 Stan. L. Rev. 476, 493 (1968). As appears from *Barker* and its progeny, the failure to show actual prejudice to the defense is no longer fatal *per se* to a speedy trial claim.

> "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a

difficult and sensitive balancing process. (footnote omitted)." *Barker* v. *Wingo,* 407 U.S. at 533.

Later, reversing a decision that a showing of actual prejudice is essential, the Supreme Court held that this language from *Barker* "expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial". *Moore* v. *Arizona,* 414 U.S. at 26. *See also Dillingham* v. *United States,* 423 U.S. 64 (1975).

In his concurring opinion in *Barker,* 407 U.S. at 537, Mr. Justice White said:

"[O]ne of the major purposes of the [speedy trial] provision is to guard against inordinate delay . . . which, wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' (citation omitted). These factors . . . are inevitably present in every case to some extent. . . ."

Adopting this language as part of its rationale in *Moore,* 414 U.S. at 27, the Supreme Court made it plain that "one of the purposes" of the constitutional guarantee is to "guard against" those forms of prejudice which are so self-evident as to require no proof, *i.e.,* those "inevitably present in every case".[5]

We conclude that defendant's failure to make an *evidentiary* showing of actual prejudice to his defense was not fatal to his claim. Finding that his claim was timely asserted, that the delay was inordinate, and that the delay was justified by no constitutionally sufficient reason, we hold that defendant was denied his constitutional right to a speedy trial.

### V. *The Remedy*

■ Under our holding, we have no alternative but to dismiss the indictment. In *Strunk* v. *United States,* 412 U.S. 434 (1973), the Court of Appeals had held that, while the defendant had

---

[5] The statutory guarantee in Virginia, fashioned long before *Barker, Moore,* and *Dillingham,* requires no showing of prejudice in any form.

been denied a speedy trial, the "extreme" remedy of dismissal was not warranted and had remanded the case to the District Court for a reduction of the sentence commensurate with the extent of the unnecessary delay. Reversing the judgment of the Court of Appeals and directing the District Court to dismiss the indictment, the Supreme Court said:

"It is true that *Barker* described dismissal of an indictment for denial of a speedy trial as an 'unsatisfactorily severe remedy.' Indeed, in practice, 'it means that a defendant who may be guilty of a serious crime will go free, without having been tried.' 407 U.S. at 522. But such severe remedies are not unique in the application of constitutional standards. In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, 'the only possible remedy.' *Ibid.*" *Id.* at 439-40.

The judgment is reversed and final judgment will be entered here dismissing the indictment.

*Reversed and final judgment.*