COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Frank and Humphreys
Argued at Richmond, Virginia


KEVIN EDGAR FORD
                                        OPINION BY
v.    Record No. 0106-00-2         JUDGE ROBERT P. FRANK
                                      NOVEMBER 7, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                  Paul M. Peatross, Jr., Judge

          Charles L. Weber, Jr., for appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Kevin Edgar Ford (appellant) was convicted of unlawful

wounding, by a jury, in violation of Code § 18.2-51.  On appeal,

he contends the trial court erred in finding that his speedy

trial rights under Code § 19.2-243 were not violated.  For the

following reasons, we affirm the judgment of the trial court.[1]

                        I.  BACKGROUND

     On October 18, 1996, appellant was arrested for malicious

wounding by an Albemarle County police officer.  Appellant posted

bond and was released from custody.  He was free on bond until

December 18, 1996, when he was incarcerated by federal

_____

     [1] The Court notes that the final sentencing order entered by
the trial court erroneously reflects that the appellant was
found guilty by the jury of malicious wounding.  Accordingly,
this case is remanded to the trial court for the sole purpose of
amending the final order to reflect that the appellant was found
guilty of unlawful wounding.

authorities for a supervised release violation.  Appellant remained in continuous federal custody from December 18, 1996 until his November 4, 1997 trial for malicious wounding in Albemarle County.

On February 24, 1997, appellant's trial counsel notified the Commonwealth's Attorney for Albemarle County that appellant was in custody and requested assistance in securing his presence at trial.  Appellant was present at the preliminary hearing on the malicious wounding charge on February 27, 1997.

On March 18, 1997, trial counsel again requested assistance from the Commonwealth's Attorney in having appellant transported to Albemarle County for trial.  By letter, dated March 27, 1997, the Commonwealth's Attorney indicated he would initiate transportation arrangements once the trial date was set.  On April 7, 1997, at docket call in the Circuit Court of Albemarle County, the Commonwealth moved to pass the case to the June docket, without objection by appellant's trial counsel.  On June 2, 1997, the case was set for trial on July 17, 1997.

On May 13, 1997, the Commonwealth requested that a detainer be lodged against appellant for the pending malicious wounding charge in Albemarle County.  By letter dated May 30, 1997, the Warden of the Federal Correctional Institution at Cumberland, Maryland, indicated the detainer had been lodged.  The letter was filed in the Circuit Court of Albemarle County on June 6, 1997.

On June 4, 1997, appellant's trial counsel again requested assistance from the Commonwealth's Attorney in having appellant transported to Albemarle County for trial.  However, on July 16, 1997, the trial court granted the Commonwealth's motion to

continue the case because appellant had not yet been transported to Virginia.  Defense counsel said:

> I would need him to be here, I would think, at least ten days prior to trial in order to have time to notify the clerk of any subpoenas I need to have issued.  So I'm stuck in this position of, no, I can't object to it because I couldn't try him if he were here today, in good conscience, without incurring an ineffective assistance of counsel, I think, but at the same time I don't think that this is through any steps of [appellant's] and I don't think it should be held against him on any speedy trial matters.

On October 3, 1997, at a hearing prior to trial, appellant contended he was entitled to be tried within five months of the February 27, 1997 preliminary hearing because he had been continuously incarcerated since that time.  The parties, however, stipulated that "the defendant was in fact held on federal charges the entire time and not directly on state charges."  The Commonwealth acknowledged the federal "probation violation on which he was held . . . stem[med] from the arrest on the Virginia charges."

Following the October 3, 1997 hearing, the trial judge, in an opinion letter dated October 15, 1997, found that the nine-month provision of Code § 19.2-243 applied, rather than the five-month period, because appellant was not being held on the malicious wounding charge but was being held by federal authorities on the federal probation violation.  The trial judge noted in his letter opinion:

> The letter sent to the Commonwealth Attorney by the Federal Bureau of Prisons clearly states that "inmates who are

> temporarily transferred pursuant to [The
> Interstate Agreement on Detainers Act]
> remain under the primary jurisdiction of
> federal authorities . . . you are required
> to return the above named inmate to this
> institution after prosecution . . . this
> inmate may not be released on bail or bond
> while in your custody . . . this inmate is
> not to be committed to a state correctional
> institution for service of any state
> sentence(s) that may be imposed as a result
> of your prosecution."

Hence, the trial judge determined that the November 4, 1997 trial date would be timely.

Alternatively, the trial judge found that the date set for trial would have been timely under the five-month provision of the statute. He stated that appellant and his attorney failed to make a "timely objection" either to the Commonwealth's motion for a continuance on June 2, 1997 or on July 16, 1997. The trial judge, thus, found that the period from June 2, 1997 to November 4, 1997 "should not count against the Commonwealth for purposes of the speedy trial statute."

Appellant was tried on November 4, 1997 and was found guilty of unlawful wounding by a jury.

## II. ANALYSIS

Appellant contends that because he was in custody continuously following the preliminary hearing, the five-month limit for prosecution under Code § 19.2-243 applies, not the nine-month period as determined by the trial judge. It is uncontroverted that appellant remained continuously in custody from the preliminary hearing on February 27, 1997 until the trial on November 4, 1997. If the nine-month limitation applies,

appellant was tried within nine months of the preliminary

hearing.  If the five-month limitation applies, we then must

determine whether the periods of delay caused by the continuances

should be charged to the Commonwealth.[2]

Code § 19.2-243 states, in part:

> Where a general district court has
> found that there is probable cause to
> believe that the accused has committed a
> felony, the accused, if he is held
> continuously in custody thereafter, shall be
> forever discharged from prosecution for such
> offense if no trial is commenced in the
> circuit court within five months from the
> date such probable cause was found by the
> district court; and if the accused is not
> held in custody but has been recognized for
> his appearance in the circuit court to
> answer for such offense, he shall be forever
> discharged from prosecution therefor if no
> trial is commenced in the circuit court
> within nine months from the date such
> probable cause was found.

> If there was no preliminary hearing in
> the district court, or if such preliminary
> hearing was waived by the accused, the
> commencement of the running of the five and
> nine months periods, respectively, set forth
> in this section, shall be from the date an
> indictment or presentment is found against
> the accused.

> If an indictment or presentment is
> found against the accused but he has not
> been arrested for the offense charged
> therein, the five and nine months periods,
> respectively, shall commence to run from the
> date of his arrest thereon.

> Where a case is before a circuit court

_____

[2] This appeal is based solely on whether Code § 19.2-243 was
violated, not on appellant's constitutional right to a speedy
trial under the Sixth Amendment.

> on appeal from a conviction of a misdemeanor
> or traffic infraction in a district court,
> the accused shall be forever discharged from
> prosecution for such offense if the trial de
> novo in the circuit court is not commenced
> (i) within five months from the date of the
> conviction if the accused has been held
> continuously in custody or (ii) within nine
> months of the date of the conviction if the
> accused has been recognized for his
> appearance in the circuit court.

Appellant contends the statute's plain meaning is that the five-month limitation applies when a defendant has been held continuously in custody, no matter what authority or sovereign holds the defendant in custody and no matter which sovereign's charges held the defendant.

Under basic rules of statutory construction, we examine the statute in its entirety, rather than by isolating words or phrases. Ragan v. Woodcroft Village Apartments, 255 Va. 322, 325, 497 S.E.2d 740, 742 (1998) (citations omitted). Therefore, we examine all of the provisions of Code § 19.2-243 to determine the legislative intent. The statute contains four events from which the speedy trial time period is calculated, each depending on the nature of the proceeding. See Code § 19.2-243. First, if there is a preliminary hearing, the time period is calculated from the date of the preliminary hearing. See id. If the accused "is held continuously in custody thereafter" he cannot be prosecuted if the trial is not commenced with five months. Id. However, "if the accused is not held in custody but has been recognized for his appearance in the circuit court to answer for such offense," the time period is nine months. Id. (emphasis added). Second, if the accused is arrested but has no

preliminary hearing or if the accused waives preliminary hearing, the time period is calculated from the date of indictment. See id. Third, when an indictment is found against the accused and he is arrested thereafter, the time period is calculated from the date of arrest thereon. See id. Finally, when an accused appeals a misdemeanor or traffic infraction from general district court, the time period is calculated from the date of conviction in general district court. See id.

In the second, third and fourth categories, the period of time is calculated from an event where the court exercises a degree of control, authority and rights over the accused, whether it be by indictment, arrest or conviction. Therefore, it follows that the phrase "continuously in custody" contained in the first paragraph of Code § 19.2-243 can only refer to "custody" when the court has control, authority and rights over the accused. This interpretation is further supported by other language in the same paragraph. The nine-month period applies "if the accused is not held in custody but has been recognized for his appearance in the circuit court to answer for such offense." Id. (emphasis added). The language, "such offense," indicates the accused is released on the subject offense. Therefore, the incarceration also must be for the subject offense.

Appellant cites Funk v. Commonwealth, 16 Va. App. 694, 432 S.E.2d 193 (1993), to support his position. Funk escaped from the Fauquier County jail on December 12, 1988 and was arrested in Pennsylvania for unrelated charges committed in Pennsylvania. See Funk, 16 Va. App. at 695, 432 S.E.2d at 193. While Funk was in prison in Pennsylvania, the Fauquier County Sheriff's Office

filed a detainer for extradition against him.  See id.  After being released from prison in Pennsylvania, he returned to Virginia, where he was arrested on unrelated charges in Hanover County.  See id.  On January 4, 1991, he was detained on the Fauquier County escape charge based on a teletype from Fauquier County.  See id.  On April 9, 1991, he was arrested on the Fauquier County escape charge.  See id.  Funk remained in custody from January 4, 1991 until his August 28, 1991 trial in Fauquier County on the escape charge.  See id.  We ruled that the five-month period began on January 4, 1991, the date on which Funk was detained on the Fauquier County escape charge.  See id. at 695, 432 S.E.2d at 193-94.  We wrote, "[t]he teletype constituted authority for the Hanover County Sheriff's Department to arrest [Funk]."[3]  Id. at 695, 432 S.E.2d at 194.  Therefore, we concluded that "at any time during that period, Fauquier County could have obtained the defendant and brought him to trial."  Id. at 695-96, 432 S.E.2d at 194.  We conclude from Funk that the five-month period begins when a defendant is held

---

[3] Code § 19.2-81 states, in part:

> Such officers may arrest, without a warrant, persons duly charged with a crime in another jurisdiction upon receipt of a photocopy of a warrant, telegram, computer printout, facsimile printout, a radio, telephone or teletype message, in which photocopy of a warrant, telegram, computer printout, facsimile printout, radio, telephone or teletype message shall be given the name or a reasonably accurate description of such person wanted and the crime alleged.

on the charges involving the speedy trial issue or related charges. See also Clark v. Commonwealth, 4 Va. App. 3, 353 S.E.2d 790 (1987). We further conclude from Funk that Funk's imprisonment in a Virginia jail was a significant factor in the decision because Fauquier County had control over obtaining the defendant for trial. See Code § 19.2-81.

In Williamson v. Commonwealth, 13 Va. App. 655, 659, 414 S.E.2d 609, 611 (1992), we held that the five-month speedy trial period did not begin until the defendant was delivered to the custody of the Virginia Beach police by North Carolina authorities. Although Williamson addresses when "arrest" occurs under the third paragraph of Code § 19.2-243, it is nevertheless instructive. On September 5, 1998, Williamson was indicted in Virginia Beach Circuit Court for receiving stolen property. See Williamson, 13 Va. App. at 656, 414 S.E.2d at 610. Williamson was never arrested on the Virginia Beach indictment, but he ultimately was arrested and held in custody in Washington, North Carolina, on unrelated charges. See id. Williamson was convicted of the North Carolina charges on December 6, 1989, and was committed to the North Carolina Department of Corrections. See id. at 657, 414 S.E.2d at 610. A detainer based on the Virginia Beach indictment was lodged with the North Carolina authorities on July 10, 1990. See id. On August 17, 1990, Williamson executed a formal request to return to Virginia Beach for a speedy trial pursuant to Code §§ 53.1-210 et seq.,[4] the Interstate Agreement on Detainers. See id.

_____

[4] We do not address the Interstate Agreement speedy trial

On September 19, 1990, Williamson was delivered to Virginia Beach and was arrested by the execution of a capias. See id. He was tried and found guilty of the offense. On appeal, he contended the five-month period should have started on October 15, 1989, when the North Carolina authorities acknowledged Virginia's request to hold him pending extradition. See id. at 658, 414 S.E.2d at 610-11. We held:

> Detention in North Carolina on accusation of being a fugitive is not the same as "arrest thereon" with respect to the Virginia indictment. Appellant's detention in North Carolina gave Virginia no rights with respect to him. It did not assert against him the specific charge set forth in the indictment. The legality of the appellant's detention in North Carolina was never contested. During his entire sojourn in North Carolina, prior to the delivery of his temporary custody to Virginia Beach authorities, he was held under North Carolina criminal process, first on charges to be tried, and then as a convicted felon under sentence.

Id. at 658-59, 414 S.E.2d at 611.

A detainer is an administrative device, serving only to advise a sister state that the inmate is wanted to face criminal charges. See Rease v. Commonwealth, 227 Va. 289, 294 n.*, 316 S.E.2d 148, 151 n.* (1984). A detainer does nothing to commence prosecution, see Ridgeway v. United States, 558 F.2d 357, 360 (6th Cir. 1977), nor does it bring the inmate into the "custody" of the requesting jurisdiction. See United States v. Carmen, 479

_____

provision since it is not the subject of this appeal.

F.Supp. 1, 1-2 (E.D.Tenn. 1979) (citation omitted), aff'd, Carman v. United States, 601 F.2d 587 (6th Cir. 1979).

Appellant maintains that Funk and Williamson are inconsistent, and because Funk was decided after Williamson, it should take precedence over Williamson. We disagree with appellant and do not view the holdings in these two decisions as inconsistent. Indeed, they are consistent.

In both decisions, we determined when the local jurisdiction obtained custody and rights over the defendant. In Williamson, the local jurisdiction obtained custody and rights over the defendant when he was turned over to the Virginia Beach authorities and arrested. In Funk, the local jurisdiction obtained custody and rights over the defendant when Fauquier County teletyped Hanover County, requesting that Hanover County detain the defendant on the Fauquier County charges. We also determined what jurisdiction held the defendant. In Funk, it was another political subdivision of the Commonwealth of Virginia. In Williamson, it was the State of North Carolina, a separate sovereign. We also examined the charge upon which the defendant was held. In Funk, after Hanover County received the teletype from Fauquier County the defendant was being held on the Hanover and Fauquier charges. In Williamson, the defendant was being held solely on North Carolina charges in North Carolina.

Appellant contends, although he was held by federal authorities on federal charges, the federal charges arose from the subject wounding charge. Appellant, therefore, reasons that the trial court should have considered the fact that the federal probation violation was based on the instant offense.

Essentially, appellant argues the underlying facts of the subject charge and the federal charge for which he was detained are so inextricably interwoven that we should consider him detained by the federal authorities on the state charge.  Appellant relies on Clark v. Commonwealth, 4 Va. App. 3, 353 S.E.2d 790 (1987), to support his position.  We disagree.

Clark supports a finding in this case that a speedy trial violation did not occur.  Clark was charged with attempted robbery, among other offenses.  See Clark, 4 Va. App. at 4, 353 S.E.2d at 791.  The indictments were dismissed because of a violation of Code § 19.2-243.  See id.  The following month, the Commonwealth indicted Clark for conspiracy to commit the substantive offenses that were dismissed earlier.  See id.  We ruled that speedy trial rights are not limited to the offense charged but also require the discharge of any offense based on the same conduct.  See id. at 6, 353 S.E.2d at 792.  We concluded:

> Code § 19.2-243 is intended to assure the defendant's right to a speedy trial and society's interest in "swift and certain justice."  To allow the prosecution to circumvent this by "delaying trial on one charge and subsequently proceeding on another closely related charge" foils both society's and a defendant's interest in speedy justice. This practice would shift the legislative determination of a speedy trial from the General Assembly to the prosecuting attorney. The General Assembly's intent should not be so easily frustrated.
>
> The conspiracy charges and the underlying substantive offenses were based on the same act or transaction and thus could be joined for trial.  See Rules 3A:10(b) and 3A:6(b).  The evidence used to prove the conspiracy charges was the same that would have been required to prove the underlying

> substantive offenses, and the conspiracy
> charges could have been included in the same
> indictment and tried contemporaneously with
> the underlying substantive offenses.
> Therefore, we conclude that the discharge
> from prosecution for the substantive offenses
> also bars the Commonwealth from prosecuting
> the defendant for conspiracy charges based on
> the same offenses, and the trial court erred
> in denying the defendant's motion to dismiss
> these charges for failure to provide him a
> speedy trial under Code § 19.2-243.

Id. at 6-7, 353 S.E.2d at 792.

Our analysis of the related offenses was premised on the fact that the related offenses could be joined for trial and tried by the same jurisdiction. See id. Appellant's argument under Clark fails because the federal probation violation and the state's substantive offense could not be joined for trial or even tried by the same sovereign.

In this case, as in Williamson, Albemarle County obtained custody and the right to control appellant when the federal authorities delivered appellant to the Albemarle authorities. Even then, Albemarle had very limited rights to appellant. The Federal Bureau of Prisons wrote, "This inmate may not be released on bail or bond while in your custody. Additionally, this inmate is not to be committed to a state correctional institution for service of any state sentence(s) that may be imposed as a result of your prosecution." Appellant was temporarily transferred to Virginia authorities for the trial and then returned to the federal authorities after the trial. Therefore, appellant still remained under the primary jurisdiction of the federal authorities.

As to the remaining two prongs, federal authorities held appellant in federal facilities upon federal charges. For the reasons stated above, the fact that the federal probation violation was based on the subject charge is of no consequence.

We, therefore, conclude appellant was not held continuously in custody within the meaning of the speedy trial statute until he was delivered to Albemarle authorities on July 31, 1997;[5] thus, he was brought to trial in timely manner. Finding that the trial took place within the time period set by the statute, we need not address whether the delays occasioned by the continuances were chargeable to the Commonwealth.

For these reasons, we affirm the judgment of the trial court.

Affirmed.

---

[5] The record does not indicate whether appellant remained in Albemarle until the November 4, 1997 trial or whether he was returned to the federal authorities, but that fact is not relevant to this analysis.