## CIRCUIT COURT OF THE CITY OF SUFFOLK

Commonwealth of Virginia

v.

Donald Lee Jordan

December 22, 2000

Case Nos. CR00F00349, -350, -351

BY JUDGE D. ARTHUR KELSEY

The defendant, Donald Jordan, claims that the Commonwealth's prosecution of this case violates his speedy trial rights. Having been in custody for more than five months prior to his trial, Jordan argues that a clear violation of his statutory speedy trial rights has been shown. Based upon uncontested evidence, however, the Court finds that Jordan's detention was on *unrelated* charges, thus not implicating his speedy trial rights on the charges in this case. In addition, the Court holds that Jordan waived any speedy trial objection he may have had by failing to object to the trial date. The Court finds equally unpersuasive Jordan's argument that his constitutional right to a speedy trial has been infringed. For these reasons, the Court denies Jordan's motion to dismiss.

On January 22, 2000, officers of the Suffolk Police Department arrested Jordan on a misdemeanor shoplifting charge involving a Food Lion grocery store. *See* Exhibit A. The following day, Jordan posted a bail bond and obtained his release. *See* Exhibit A-1. About a month later, on February 28, 2000, police officers arrested Jordan on three different charges: (i) a shoplifting charge involving a Family Dollar store, (ii) a drug possession

charge, and (iii) a drug paraphernalia possession charge. *See* Exhibits B, C, and D. Jordan did not post a bail bond, and thus, remained detained on these charges pursuant to a pretrial Commitment Order. *See* Exhibit D-1.

On April 6, the Commonwealth obtained a *nolle prosequi* of the original misdemeanor shoplifting charge involving the Food Lion grocery store. Four days later, on April 10, the Suffolk General District Court conducted a preliminary hearing on the three charges coupled to the February 28 arrest. The General District Court dismissed the two drug related charges and certified to the grand jury the shoplifting charge involving the Family Dollar store. *See* Exhibit E. The Western Tidewater Regional Jail then received a Release Order directing the jailer to release Jordan from custody on the two drug charges. *See* Exhibit F. Jordan remained in custody on the shoplifting charge involving the Family Dollar store.

About two weeks later, on April 26, the Commonwealth obtained direct indictments against Jordan on three charges: (i) possession of cocaine, (ii) possession of heroin, and (iii) a felony third-offense shoplifting charge involving the Food Lion incident that had earlier been dismissed by *nolle prosequi* as a misdemeanor. The Clerk of Court prepared the capias for these three charges, which was later retrieved by law enforcement officers.

The Suffolk Circuit Court, Chief Judge Westbrook J. Parker presiding, arraigned Jordan on May 4 on the three direct indictments as well as the Family Dollar shoplifting charge. Jordan pleaded not guilty to the four charges and waived his right to the jury trial. With the concurrence of both parties, the Court scheduled two trial dates. The Court set the trial of the Food Lion shoplifting charge on June 21 and the remaining charges (the two drug possession charges and the Family Dollar shoplifting charge) on June 22. Though Jordan had not yet been physically served with the capias arising out of the direct indictments, neither he nor his attorney voiced any objection to setting the trial dates.

On May 15, the Virginia Parole Board issued an arrest warrant on a PB-14 form directing that Jordan be committed to the "nearest county or city jail, there to be held subject to the further action of said Board." Exhibit G. The parole revocation warrant stemmed from a 1992 conviction that had resulted in a seven-year penitentiary term. While at Western Tidewater Regional Jail, Jordan was served with the PB-14 warrant on June 7. He has been detained in jail from June 7 to the present under this warrant. *See* Exhibit G (PB-14 form); *see also* Exhibit H (inmate jail classification record); Exhibit J (Commitment Order issued on August 1, 2000, for a probation violation.).

At the June 21 trial, Judge Parker heard the evidence and orally pronounced Jordan guilty of the Food Lion shoplifting charge. The next day,

June 22, Judge Parker found Jordan not guilty of the Family Dollar charge but guilty on the two drug charges. The Court ordered the preparation of a presentence report and scheduled a sentencing hearing for August 11. On July 1, law enforcement officers served Jordan with the capias for the three direct indictment charges. *See* Exhibit I. A Commitment Order issued on July 1 directed the jailer to "take custody of and convey the accused to the Court" on the direct indictment charges. *Id.* At a sentencing hearing on August 11, before any written conviction order had been entered, Judge Parker withdrew his earlier oral findings upon learning that Jordan had not been served with the capias until July 1. He then ordered that the matter be returned to the docket for an arraignment on September 1, 2000.

At his arraignment on September 1, Jordan again entered pleas of not guilty to the three direct indictments. The Commonwealth advised the Court that "we really sort of need to go back to square one." Hearing Transcript at 3 (Sept. 1, 2000). Jordan's counsel added, "I would agree with that, Your Honor." *Id.* With the concurrence of both the Commonwealth and Jordan, Judge Parker rescheduled the trial date on the drug charges for November 2. *Id.* at 8. Jordan agreed to this trial date without raising any speedy trial objections. "I've already set two sentencings on that date," Jordan's counsel advised the Court, "but that would be fine otherwise." *Id.* The Court then scheduled the trial of the third-offense petty larceny for November 6. *Id.* Here again, Jordan's counsel raised no speedy trial objection. Both the content and context of defense counsel's statements at the hearing make clear he acquiesced to the dates chosen for these two trials.

A month and a half later, Jordan filed a motion to dismiss the three direct indictments on the ground that the "Defendant was incarcerated in Western Tidewater Regional Jail continuously from February 28 until the present time, a fact known to the Commonwealth." Motion to Dismiss ¶ 1 (Oct. 18, 2000). Though the motion to dismiss only alleged a constitutional violation, *id.* at ¶ 4, the Court permitted Jordan to raise at oral argument an alleged violation of the Virginia Speedy Trial Act, Va. Code Ann. § 19.2-243 (Michie 2000). The Court requested briefs, primarily directed at the statutory speedy trial issue. The Court also directed the Commonwealth to obtain classification records from the jail and to make these records available to Jordan's counsel. By agreement of both parties, these records became stipulated exhibits on the speedy trial motion. *See* Exhibits A to I. The Court announced its decision to deny the motion to dismiss on November 2, promising a written opinion to follow the conclusion of the case.

November 6, Judge E. Everett Bagnell presided over the trial on the two drug charges along with the third-offense petty larceny charge involving the

Food Lion grocery store (which had been rescheduled from November 2 to 6). Finding the evidence sufficient to warrant findings of guilt, Judge Bagnell found Jordan guilty on all three charges. On the drug charges, Judge Bagnell issued two concurrent five-year penitentiary sentences with three years and nine months suspended. *See* Trial/Sentencing Orders, Case Nos. CR00F00351 and -350 (Nov. 30, 2000). On the larceny charge, Jordan received a five-year sentence with four years suspended. *See* Trial/Sentencing Order, Case. No. CR00F00349 (Nov. 30, 2000).

An accused's right to a speedy trial rests upon three sources of law: the Sixth Amendment to the United States Constitution, Article I, § 8, of the Virginia Constitution, and Va. Code Ann. § 19.2-243. *See generally* Ronald J. Bacigal, *Virginia Criminal Procedure*, §§ 14-10 to 14-12, 296-304 (4th ed. 1999). The Virginia speedy trial statute "is the embodiment 'by the legislature of what constitutes a speedy trial, as that term is used in the Bill of Rights'." *Id.* (citing *Flanary v. Commonwealth*, 184 Va. 204, 208, 35 S.E.2d 135, 137 (1945)). The right to a speedy trial serves:

> the dual function of fulfilling society's interest in having those accused of crime expeditiously brought to justice and of assuring that those accused of a crime will neither languish in jail while awaiting trial nor suffer the prolonged anxiety, embarrassment, and expense associated with undue delay while awaiting trial whether free on bail or not.

*Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 519-20 (1972)).

The Virginia General Assembly intended the speedy trial statute to "clarify and augment the constitutional guarantees of the Sixth Amendment to the United States Constitution and Article I, § 8, of the Virginia Constitution." *Bunton v. Commonwealth*, 6 Va. App. 557, 558, 370 S.E.2d 470, 470 (1988). The speedy trial statute should be construed "to assure both a defendant's constitutional right to a speedy trial and society's interest in 'swift and certain justice'." *Clark v. Commonwealth*, 4 Va. App. 3, 5, 353 S.E.2d 790, 791 (1987) (quoting *Fowlkes v. Commonwealth*, 218 Va. 763, 766-67, 240 S.E.2d 662, 664 (1978)); *see also Hutchins*, 30 Va. App. at 576, 518 S.E.2d at 839. The statutory dismissal remedy, viewed by some as "draconian," acts as a legislative pardon by forever discharging the accused from criminal liability — with or without a showing that the accused experienced actual prejudice as a result of the delay. John L. Costello, *Virginia Criminal Law and Procedure*, § 52.3-4, at 674 (2d ed. 1995).

With these policies in mind, we turn to Va. Code Ann. § 19.2-243. It states that trial must be commenced within five months "from the date of an indictment or presentment" if the accused has been continuously in custody and there has been "no preliminary hearing in the district court. . . ." *Id*. The statute goes on to say that if "an indictment or presentment is found against the accused but he has not been arrested *for the offense charged therein*," the five-month period shall run from the "date of his *arrest thereon*." *Id*. (emphasis added). Thus, in the absence of a preliminary hearing, the statute runs the five-month period from the date of indictment or the date of arrest, whichever comes later.

The "arrest" spoken of in the statute involves the arrest for the "offense charged therein" — that is, the offense described in the indictment. *Id*.; *see also Williamson v. Commonwealth*, 13 Va. App. 655, 658, 414 S.E.2d 609, 611 (1992) ("arrest thereon" phrase refers to the indicted charge). For the in-custody period to run on a particular offense, "the incarceration also must be for the subject offense." *Ford v. Commonwealth*, 33 Va. App. 682, 689, 536 S.E.2d 467, 470 (2000). Prior precedent also makes clear, however, that "the five-month period begins when a defendant is held on the charges involving the speedy trial issue or *related charges*." *Ford*, 33 Va. App. at 690, 536 S.E.2d at 471 (emphasis added) (synthesizing *Funk v. Commonwealth*, 16 Va. App. 694, 432 S.E.2d 193 (1993), and *Clark v. Commonwealth*, 4 Va. App. 3, 353 S.E.2d 790 (1987)).

At a minimum, a related charge involves an offense "based upon the same conduct." *Ford*, 33 Va. App. at 693, 536 S.E.2d at 472. A conspiracy charge, for example, should be dismissed if the speedy trial statute bars the prosecution of the underlying criminal offense. *Id*.; *Clark*, 4 Va. App. at 6-7, 353 S.E.2d at 792. The charges should be deemed related because: "The evidence used to prove the conspiracy charges was the same that would have been required to prove the underlying substantive offenses, and the conspiracy charges could have been included in the same indictment and trial contemporaneously with the underlying substantive offenses." *Id*. For charges to be treated as related for speedy trial purposes, therefore, they must have a commonality of proof sufficient to warrant consolidated pleadings and trials.[1]

---

[1]   Earlier versions of the speedy trial statute included language tying the deadline to the time period the accused was being "held" in any court for trial. *Knott v. Commonwealth*, 215 Va. 531, 534, 211 S.E.2d 86, 88 (1975) (discussing Code § 19.1-191, the predecessor speedy trial statute). Under this language, simply being incarcerated "by the Commonwealth in her penal institutions" (regardless of the precise charge) qualified as being *held for trial* under the statute. *Id*. The Virginia General Assembly later substantially rewrote the speedy trial statute, along with an

At the time of the three direct indictments against Jordan, he had not been arrested on (nor was he in custody for) any of those charges. Jordan had been previously incarcerated on various charges. On the date of his direct indictments, however, he had been released from all charges except the third-offense petty larceny involving the Family Dollar store. None of the three direct indictments can be characterized as a related charge to the Family Dollar larceny offense. Completely different fact patterns and dissimilar evidentiary proofs preclude the conclusion that any of these charges should be treated as related for purposes of the speedy trial statute.

Throughout this proceeding Jordan has argued only that the five-month period should run from the date of indictment in April 2000, not any later date. At no point has Jordan argued that the PB-14 arrest warrant (issued by the Virginia Parole Board in May 2000 arising out of a 1992 conviction) could be characterized as a "related" charge to the three direct indictments. And nothing in the record suggests that it could be. But even if it were, Jordan's trial on November 6 commenced 152 days from the date he was arrested on the parole violation on June 7. The five-month period requires the accused to be "tried within 152 and a fraction days." *Heath v. Commonwealth*, 32 Va. App. 176, 179, 526 S.E.2d 798, 799 (2000) (*en banc*) (quoting *Moten v. Commonwealth*, 7 Va. App. 438, 441, 374 S.E.2d 704, 706 (1988)).

Because Jordan's arrest on the direct indictments occurred on July 1 (thereby beginning Jordan's parallel incarceration on *those* charges), this date starts the running of the five-month period of Va. Code Ann. § 19.2-243. The date of indictment does not govern given the fact that Jordan's pretrial detention at that time was due solely to an unrelated larceny charge. The records of the Western Tidewater Regional Jail confirm that no legal process kept Jordan in custody *on the direct indictments* until the capias was served on July 1.[2] Indeed, had Jordan not been subject to the preexisting Commitment Order for the Family Dollar larceny charge, he would have had

---

overhaul of the entire criminal procedure portion of the Virginia Code. The revision of the speedy trial statute ran the five-month period (in cases where no preliminary hearing has taken place) from the date of indictment or "arrest thereon." *See* 1975 Va. Acts of Assembly, ch. 495 (recodifying statute as Code § 19.2-243).

[2] This scenario must be distinguished from a situation where a pretrial detainee has been arrested on several charges. It matters not whether a defendant is simultaneously in custody on charges other than the one subject to the speedy trial objection, so long as he is truly in custody on that charge as well. *See Price v. Commonwealth*, 25 Va. App. 655, 661, 492 S.E.2d 447, 450 (1997), *aff'd*, 256 Va. 373, 506 S.E.2d 317 (1998); *Funk v. Commonwealth*, 16 Va. App. 694, 695-96, 432 S.E.2d 193, 194 (1993).

every legal right to walk out of the jail on April 26 notwithstanding the issuance that day of three direct indictments against him.

Jordan protests this reasoning, claiming it makes no sense in light of his convictions on all three direct indictments a little over a week before he received service of the capias. Surely the Commonwealth's Attorney thought, Jordan argues, that the capias had been served on Jordan prior to trial. Perhaps so. But this observation does not change the analysis. A prosecutor's subjective, but erroneous, belief that an accused has been arrested is not the same thing as an arrest. Believing it to be so does not make it so. Section 19.2-243 speaks of the actual date of arrest, not the date the prosecutor mistakenly presumed the defendant was arrested.

Jordan also complains of the anomaly of being convicted on two indictments on which he had never been arrested. Fair point, to be sure, but the anomalous nature of the procedure becomes even more so given Jordan's lack of any objection to the lack of service either at his initial arraignment or at his trials on June 21 and 22.[3] And despite Jordan's waiver of this issue, Judge Parker relieved him of this waiver and summarily withdrew his earlier findings of guilt — all of which concededly occurred within five months of indictment, the earliest possible start date for the speedy trial clock. Judge Parker's response more than adequately addressed any legitimate concerns Jordan may have had arising out of the belated arrest issue.

Jordan's statutory speedy trial argument also fails because he waived the issue by agreeing to the rescheduled trial dates and by failing to raise his objection at that time. The speedy trial statute provides that a "continuance" granted by the court with the "concurrence of the accused or his counsel" or in the face of the accused's failure "to make a timely objection" shall not be counted toward the five-month period. Va. Code Ann. § 19.2-243(4). The

---

[3] Virginia Supreme Court Rule 3A:9(b) requires the defendant to raise before the conclusion of trial all matters affecting "defects in the institution of the prosecution or in the written charge upon which the accused is to be tried" unless the defect undermines the court's jurisdiction or demonstrates the lack of a *prima facie* case. "Failure to present any such defense or objection as herein provided shall constitute a waiver thereof." *Id.* The waiver principle covers defects in an indictment. *See Medici v. Commonwealth*, 260 Va. 223, 226 n.1, 532 S.E.2d 28, 30 n.1 (2000); *Stamper v. Commonwealth*, 228 Va. 707, 713, 324 S.E.2d 682, 686 (1985) (applying the criminal statute of jeofails, Va. Code Ann. § 19.2-227 (Michie 2000)). All the more, the waiver should apply to defects in the service of a capias required by Rule 3A:7(b). The Commonwealth's failure to serve the capias did not affect the Court's subject-matter jurisdiction over Jordan, who had been fully arraigned on the charges prior to trial.

unique procedural context of this case fits within this waiver provision. The June trial dates had been set by court order. When advised of the untimely arrest issue, the Court withdrew its oral findings and rescheduled the trials for a later date. While no one used the word "continuance" during the dialogue between the bench and counsel, that is exactly what it was. Jordan's trials having already begun, only three options then existed for each charge: an acquittal, a final conviction, or a postponement of the trial. On the direct indictment charges, for truly *sui generis* reasons, the trial of these matters was simply postponed to another date.

As the Virginia Supreme Court recently affirmed, under certain circumstances a defendant waives his statutory speedy trial rights if he "acquiesced" to the trial date or "affirmatively agreed" to the date without raising a speedy trial objection. *Commonwealth v. Hutchins*, 260 Va. 293, 297-98, 533 S.E.2d 622, 625 (2000). In that case, the trial court conducted an arraignment within the five-month period and set a trial date outside the deadline. The defendant agreed to the trial date, raising no objection on speedy trial grounds. The arraignment process, coupled with a direct discussion on setting a trial date, "constituted a continuance of the trial date within the intendment of Code § 19.2-243(4)." *Id.*

The waiver principle recognized in *Hutchins* does not conflict with the proposition that a defendant "does not waive his right to a speedy trial merely because he remains silent or does not demand that a trial date be set within the prescribed period." *Godfrey v. Commonwealth*, 227 Va. 460, 463, 317 S.E.2d 781, 782 (1984). It remains the law that an "accused may stand mute without waiving his rights so long as his actions do not constitute a concurrence in or necessitate a delay of the trial." *Baker v. Commonwealth*, 25 Va. App. 19, 23, 486 S.E.2d 111, 113, *aff'd on reh'g en banc*, 26 Va. App. 175, 493 S.E.2d 687 (1997) (citation and internal quotation marks omitted). This settled anti-waiver rule operates in cases where no trial date has been set by court order, and thus, no issue exists over rescheduling a trial date (either by a formal continuance motion or by a *de facto* continuance). Under § 19.2-243(4), an accused may stand mute when the court sets the trial date, but he must speak or risk waiving his speedy trial rights when the court continues the trial to a subsequent date.

Having found no violation of the speedy trial statute, we turn next to the constitutional claim. This question involves "a difficult and sensitive balancing process in which the court examines on an *ad hoc* basis the conduct of both the state and the accused which led to a delay in prosecution." *Jefferson v. Commonwealth*, 23 Va. App. 652, 658, 479 S.E.2d 80, 82 (1996) (citation omitted). Four factors must be examined: (i) length of delay, (ii) the

reason for the delay, (iii) the defendant's assertion of his right to speedy trial, and (iv) prejudice to the defendant. *Miller v. Commonwealth*, 29 Va. App. 625, 632, 513 S.E.2d 896, 900 (1999); *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of these four factors should be treated as "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," but rather should be viewed as interrelated considerations along with "other circumstances as may be relevant." *Holliday v. Commonwealth*, 3 Va. App. 612, 616, 352 S.E.2d 362, 364 (1987) (citation omitted).

The length of delay factor "triggers an examination of the remaining considerations." *Riddick v. Commonwealth*, 22 Va. App. 136, 144, 468 S.E.2d 135, 139 (1996) (internal quotation marks omitted). Absent a showing that the delay is "presumptively prejudicial," there is no necessity for further "inquiry into the other factors that go into the balance." *Id.*; *Fowlkes v. Commonwealth*, 218 Va. 763, 766, 240 S.E.2d 662, 664 (1978); *Price v. Commonwealth*, 24 Va. App. 785, 790-91, 485 S.E.2d 655, 657 (1997); *Beachem v. Commonwealth*, 10 Va. App. 124, 131, 390 S.E.2d 517, 520 (1990) ("A defendant must be able to at least raise the presumption that the delay . . . was so detrimental as to have endangered his right to a fair trial.").

In this case, Jordan cannot demonstrate either presumptive or actual prejudice because of the delay. In part, this issue begs the question of when to start the delay period — from the date of the direct indictments (as Jordan argues) or the date of arrest (as the Commonwealth contends). Under the statutory analysis, the Court has found that the period runs from the date of arrest because Jordan had not been taken into custody on the direct indictment charges until the time of his arrest. That holding all but eliminates any possibility of a constitutional deprivation, for "a process which results in a trial on the merits within the statutorily described time does not support a presumption of prejudice." *Sheard v. Commonwealth*, 12 Va. App. 227, 231, 403 S.E.2d 178, 180 (1991) (citation omitted).

Unaided by a presumption of prejudice, Jordan must demonstrate actual prejudice arising out of the allegedly delayed period. This he cannot do. The delay caused him no loss of evidence or unavailability of his witnesses. Nor did the delay indirectly enhance the strength of the Commonwealth's case against Jordan on any of the charges. The proceeding before Judge Bagnell involved exactly the same evidence presented to Judge Parker. The delay, therefore, neither strengthened the Commonwealth's case against Jordan nor diminished his ability to respond to it.

The second and third factors, the reason for the delay and the defendant's assertion of his speedy trial rights, also counsels against a finding of a constitutional violation. Jordan's first trial began well within five months of

the direct indictments. At that time Jordan did not object to the trial going forward on the ground that he had not been served with the capias. Despite Jordan's waiver of this defect, Judge Parker later withdrew his findings and rescheduled the trial. Jordan concurred in the new trial date, never once objecting on speedy trial grounds. These circumstances reflect poorly on Jordan's diligence in asserting his speedy trial right and favorably on the underlying reason for the delay. Together with unexceptional length of the delay, these factors lead away from any conclusion that Jordan's constitutional right to a speedy trial has been infringed.

In sum, the Court finds no violation of Jordan's statutory or constitutional rights to a speedy trial. Because Jordan's arrest took place after his indictment, the later date starts the five-month period in Va. Code Ann. § 19.2-243. And even if the earlier date of indictment applied, Jordan waived his statutory rights by concurring in the rescheduled trial date. As for Jordan's constitutional right to a speedy trial, not one of the governing factors favors Jordan. For these reasons, the Court denies Jordan's motion to dismiss.