# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

    v.

Brenton Chaz Carter

April 4, 2016

Case No. FE-2015-671

BY JUDGE RANDY I. BELLOWS

This case presents a matter of first impression, requiring the interpretation of Virginia Code § 53.1-187, which guarantees that defendants are given jail credit for all time spent in a state or local correctional facility awaiting trial.

The question arises in the following factual circumstance: (1) a defendant is held in a local jail on felony charges; (2) a circuit court in a different county issues a capias for an alleged probation violation, which is lodged as a detainer at the local jail; (3) the commitment order accompanying the capias indicates that the defendant is to be "held without bail"; (4) when the defendant is sentenced on the felony charges, he is given a period of active incarceration and a period of suspended incarceration; (5) when calculated, the period of time the defendant has actually been in jail exceeds the sentence of active incarceration that was imposed, resulting in unused jail credit; (6) after sentencing, the defendant is transferred to the jurisdiction that issued the capias which was lodged as a detainer at the local jail, and the defendant's probation in that jurisdiction is revoked and a sentence of active incarceration imposed; (7) the defendant requests that his unused jail credit be applied to the sentence of active incarceration he received on the probation violation, due to the fact that the detainer was in effect throughout the time period associated with the unused jail credit; (8) the Sheriff declines the defendant's request, relying on a written policy that all unused jail credit on a suspended sentence "will not be transferred for use

on another jurisdiction's sentence," but rather will be reserved should the defendant ever violate his local probation.

The question presented is this: Where a defendant has been incarcerated simultaneously on both local charges and a detainer from another county, and where his incarceration results in unused jail credit, can the Sheriff decline to apply the unused jail credit to the sentence arising out of the detainer but instead reserve the unused jail credit for possible use in the future should the defendant violate his local probation? For the reasons stated below, the Court finds, pursuant to Virginia Code § 53.1-187, that the Sheriff must apply the unused jail credit to the sentence arising out of the detainer.

### Factual Background

Two exhibits were offered at the evidentiary hearing on March 25, 2016. They are Commonwealth Exhibit 1 (a copy of the Virginia Code § 53.1-116) and Commonwealth Exhibit 2 (the Fairfax Sheriff's written policy regarding jail credit). In addition, the Court takes judicial notice of the files of the Fairfax General District Court (Court Exhibit 1) and the transcript of testimony of Sgt. Kevin Thornhill, Deputy Sheriff (Court Exhibit 2), which was prepared by the Court's law clerk from the audio recording of the testimony. In addition, defense counsel obtained and produced the Capias/Commitment Order and the Sentencing Order in the Loudoun County Circuit Court, as requested by the Court. These are respectively marked as Court Exhibits 3 and 4.

On February 4, 2015, according to the Commonwealth's Statement of Facts, a fire broke out in the clothing section at the Wal-Mart at Chantilly Shopping Center. Several thousand dollars' worth of merchandise was destroyed and the Wal-Mart had to be evacuated. Fire marshal investigation indicated that the fire was deliberately started by a firework that was placed among the merchandise.

On February 26, 2015, the Defendant was arrested pursuant to a felony warrant and charged with a violation of Virginia Code § 18.2-79, alleging that the defendant did "maliciously burn or destroy by the use of explosives, or aid, counsel, or procure the burning or destruction of Walmart Department Store; when a person was in the building." The defendant faced other charges arising out of the same incident. Bond was initially denied.

On May 4, 2015, a $5,000 cash or corporate surety bond was granted in the Fairfax County General District Court, along with a requirement of participation in the Supervised Release Program. The bond amount was reduced on May 8, 2015, to $3,500 cash or corporate surety, but no bond was posted.

On June 17, 2015, an additional felony charge was lodged against the defendant, arising out of the same incident. The defendant was arrested pursuant to warrant on the additional charge of manufacturing, transporting,

distributing, possessing, or using a firebomb or explosive material or device, in violation of Virginia Code § 18.2-85. He was held without bond on the new charge.

On July 8, 2015, the preliminary hearing was waived and the matter certified to the grand jury.

On July 20, 2015, the defendant was indicted on two counts. Count One charged that the defendant did "unlawfully, feloniously, knowingly and intentionally possess materials from which explosives can be made with the intent to manufacture an explosive device," in violation of Virginia Code § 18.2-25. Count Two charged that the defendant did "unlawfully possess, handle and use prohibited fireworks," in violation of Virginia Code §§ 27-97 and 27-100.

On July 27, 2015, the defendant pleaded guilty to both counts before the Honorable Brett A. Kassabian of the Fairfax County Circuit Court. This plea was entered pursuant to a plea agreement, which read in part as follows: "The Commonwealth agrees to cap active incarceration imposed on the sentencing date at time served as of the sentencing date, with all other aspects of sentence to be determined by the Court." The defendant's bond was revoked. A pre-sentence report was ordered and sentencing was set for August 28, 2015.

On July 28, 2015, a capias from Loudoun County Circuit Court was lodged as a detainer at the Fairfax County Adult Detention Center. The "Executed" section of the Capias was signed by a Fairfax County Deputy Sheriff on behalf of Sheriff Kincaid and dated July 28, 2015. The capias reads in part: "You are hereby commanded in the name of the Commonwealth to forthwith arrest the accused and to bring him/her before a judicial officer to answer the charge(s) listed below. . . ." The charges listed below were two felony probation violations. (The defendant was on probation due to a July 2012 conviction in Loudoun County for Grand Larceny and Burglary.) The Commitment Order accompanying the Capias, and signed by the same Fairfax County Deputy Sheriff, indicates that the defendant was to be "held without bail."

On August 7, 2015, Judge Kassabian continued the sentencing to September 25, 2015, at the request of the probation officer, in order to afford the probation officer sufficient time to complete the pre-sentence report.

On September 10, 2015, in light of the continuance of the sentencing hearing, the defendant filed a motion for a personal recognizance bond, and represented that if the bond were granted, the defendant would reside at the Loudoun County Adult Detention Center. The following date, the Honorable Penney S. Azcarate, Fairfax Circuit Court Judge, denied the bond motion.

On September 25, 2015, the defendant was sentenced by Judge Kassabian to one year in jail on Count One and twelve months in jail on Count Two. The sentences were to run concurrently, and all time but 180

days was suspended on both counts for a period of one year. The defendant was further placed on probation for one year following his release from incarceration.

On September 29, 2015, the defendant was transferred from the Fairfax County Adult Detention Center to the Loudoun County Adult Detention Center, pursuant to the detainer lodged on July 28, 2015.

On January 29, 2016, the defendant's probation was revoked in Loudoun County and the defendant was sentenced in Case Number CR-01023806-00 to serve 1 year and 5 months, with all but six months suspended, and in Case Number CR-01023806-01 to serve 1 year and 5 months, with all but six months suspended, resulting in a total period of incarceration of 12 months.

On March 18, 2016, the defendant filed a "Notice and Motion to Order the Fairfax County Adult Detention Center to Transfer Unused Jail Credit Obtained While Held by Detainer." Mr. Goodman, who was the defendant's counsel, set the matter for March 25, 2015, on the criminal motions docket. Judge Kassabian indicated that he had no objection to another judge hearing the matter on that date, since Judge Kassabian did not have a criminal motions docket on March 25, 2015.

On March 25, 2015, this Court heard argument on the matter and took testimony from Sgt. Kevin G. Thornhill, a Fairfax County Deputy Sheriff assigned to Correctional Service/Inmate Records. The Court then took the matter under advisement. The Court, having now considered the evidence and the legal issues, considers the matter ripe for resolution.

## Facts Relating to the Issue of Jail Credit

The pertinent facts relating to the issue of jail credit are undisputed. They are as follows.

The defendant was continuously in the custody of the Fairfax Sheriff from the date of his arrest (February 26, 2015) until the date he was transferred to Loudoun County (September 29, 2015).

The defendant received "good time credit" calculated at 87% of his felony sentence. Sgt. Thornhill indicated that the credit is actually 86.96% but it is rounded out to 87%, or four and a half days credit for every 30 days of a sentence.

When the 87% "good time credit" is applied to the 180 days of active incarceration imposed by Judge Kassabian, it works out to 156.6 days, which is rounded to 157 days to serve.

Sgt. Thornhill calculated that this meant the defendant's sentence completion date on his Fairfax convictions was August 2, 2015.

The four day period from the date of sentencing (September 25, 2015) to the date of the defendant's transfer to Loudoun County (September 29, 2015) was awarded as jail credit to defendant's Loudoun County Case.

No jail credit was awarded to the defendant for the time period between August 2, 2015, and September 25, 2015. Sgt. Thornhill testified that this has been calculated to be a time period of 54 days.

### Fairfax County Sheriff's Written Policy Regarding Jail Credit

Virginia Code § 53.1-116 requires that the "jailer shall keep a . . . (iii) written policy stating the criteria for and conditions of earned credit in the facility and the revocation of such credit." The Fairfax Sheriff has such a policy, dated December 12, 2002, which reads in its entirety as follows:

> Please be advised that it is the policy of the Fairfax County Sheriff's Office to allow jail credit to be awarded, to other jurisdictions, under the following circumstances:
>
> 1. Inmate[']s criminal case[] has been dismissed.
>
> 2. Inmate[']s criminal case adjudicated by a Not Guilty verdict[.]
>
> 3. Inmate[']s criminal case sentence is concurrent with other jurisdiction['s] criminal       sentence.
>
> 4. Sentencing Court orders time credit to run concurrent[ly] with other jurisdiction['s] sentence.
>
> 5. Inmate sentenced to Department of Corrections.
>
> 6. Inmate incarcerated on civil matter.
>
> *In the event that an inmate has "un-used" credit remaining on a suspended sentence, that amount will not be transferred for use on another jurisdictions sentence. The un-used portion of jail credit will be applied to any future violation of that suspended sentence.*

Commonwealth's Exhibit 2 (emphasis added).

Sgt. Thornhill testified that "all the jurisdictions around the state of Virginia have the same type of policy. Everybody interprets the Code the same way. We have quarterly meetings and we get together and we discuss this stuff as well. Each jurisdiction, I guess, holds on to their credit and they don't send it out to the next jurisdiction that the defendants are going to." (Court Ex. 2 at 5.)

At the March 25, 2016, evidentiary hearing, Sgt. Thornhill indicated that pursuant to the highlighted paragraph of the written policy, the defendant received no jail credit toward his Loudoun sentence for the time period of August 2, 2015, to September 25, 2015. Rather, according to Sgt. Thornhill, that jail credit is reserved should the defendant subsequently violate his Fairfax sentence probationary terms and have a period of time revoked.

*Summary of Defendant's Motion*

The defendant argues that the position taken by the Sheriff violates both the Virginia Code and the Constitution of the United States.

With respect to the Virginia Code, the defendant argues that the position taken by the Sheriff violates Virginia Code § 53.1-187, further discussed below.

With respect to the Constitution, the defendant argues that the failure to give an inmate credit for time in custody violates the Fourteenth Amendment to the United States Constitution.

In support of this argument, the defendant relies upon *Durkin v. Davis*, 390 F. Supp. 249, 252-53 (E.D. Va. 1975), *rev'd on other grounds*, 538 F.2d 1037 (4th Cir. 1976) ("The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' The right to pre-conviction and post-conviction confinement sentence credit constitutes an interest in 'liberty' because when such credit is withdrawn, the sentence that a state prisoner must serve is automatically increased and the date for parole eligibility is, thereby, extended. . . . [T]he right to sentence credit springs from a source more fundamental than § 53-208 of the Code of Virginia [precursor of Virginia Code § 53.1-187]; the right is bottomed squarely upon the Fourteenth Amendment to the United States Constitution. . . . A failure to credit the sentence of a convicted indigent with pre-conviction confinement served would be violative of the Fourteenth Amendment . . . ."). *See also Durkin v. Davis*, 538 F.2d 1037, 1039 (4th Cir. 1976) ("It seems recognized that the right to credit for jail time awaiting trial on a bailable offense and pending appeal is not a matter of legislative grace but is a right constitutionally mandated . . . .").

Specifically, the defendant asserts that "[t]he Sheriff's Office is violating Mr. Carter's constitutional rights by refusing to send Loudoun County the time for which he served on the Loudoun detainer in Fairfax that cannot otherwise be attributed to a Fairfax sentence." (Def.'s Brief at 5.)

In essence, the defendant is mounting a constitutional challenge to Virginia Code § 53.1-116, which requires that each jailer have a written policy governing jail credit, but does not specify the parameters of such a policy. However, because this Court finds in the defendant's favor on statutory grounds, it need not, and therefore must not, reach the constitutional issue. *See, e.g., Klarfeld v. Salsbury*, 233 Va. 277, 355 S.E.2d 319, 32 (1987) ("Firmly established in the field of constitutional law is the doctrine that a court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to the decision of the case on the merits.").

Finally, the defendant argues that Judge Kassabian "intended the time from July 29, 2015, to September 25, 2015, to be credited to Mr. Carter's Loudoun sentence." As has often been said, a Circuit Court speaks through its orders. *See, e.g., McBride v. Commonwealth*, 24 Va. App. 30, 480 S.E.2d

126, 128 (1997) ("A court speaks through its orders and those orders are presumed to accurately reflect what transpired."). Judge Kassabian's sentencing order does not address the Loudoun sentence at all, or how any unused jail credits were to be applied. The defendant's entitlement to have jail credit applied to his Loudoun sentence is not based on the defendant's assessment of Judge Kassabian's intentions but, rather, by operation of statute, specifically Virginia Code § 53.1-187.

The Commonwealth filed no opposition to the defendant's motion.

### Discussion

Any discussion of the legal issues presented by the instant case must begin with Virginia Code § 53.1-187, which reads in pertinent part as follows: "Any person who is sentenced to a term of confinement in a correctional facility shall have deducted from any such term all time actually spent by the person . . . in a state or local correctional facility awaiting trial . . . ." *Id.*

This language has been interpreted on several occasions in both appellate decisions and opinions of the Attorney General. *See Bruton v. Commonwealth*, 63 Va. App. 210, 755 S.E.2d 485, 488 (2014) ("[A]ppellant's right to receive a credit for the time he served while awaiting trial is not speculative. Nor is it discretionary."); 1972-1973 Op. Atty. Gen. 313 ("There is no, question that a person convicted is entitled to credit for time spent awaiting trial . . . . [T]he legislature has made no distinction as to the location of the jail in which the individual is confined. . . ."); 1995 Op. Atty. Gen. 219 ("A prior opinion of the Attorney General concludes that it was the intention of the General Assembly in passing § 53-208, the predecessor to § 53.1-187, 'that an inmate be given credit for all time spent in jail awaiting trial regardless of the jurisdiction so long as there is no duplication.' [1974-1975 Op. Atty. Gen. 129] . . . The General Assembly has not enacted any amendments to § 53.1-187 affecting the conclusion of that prior opinion.").

The principle that emerges from a review of the statute and these opinions is that a defendant must be given credit for all of his time in jail awaiting trial. The corollary to this principle is that no jail credit can be reserved for possible use in the future if it can be applied to a sentence directly associated with the defendant's detention.

It is the position of the Fairfax Sheriff, as expressed by Sgt. Thornhill, that the defendant was being held solely on Fairfax charges until he was sentenced by Judge Kassabian on September 25. ("He was being held strictly for his Fairfax stuff up until he was sentenced . . . .") (Court Ex. 2 at 5.)) The Court disagrees. Appellate case law, binding on this Court, makes clear that the Loudoun detainer operated as an arrest. *Funk v. Commonwealth*, 16 Va. App. 694, 432 S.E.2d 193 (1993).

*Funk* involved a defendant being held in Hanover County on a set of charges unrelated to an escape charge. While being held on the unrelated charges:

> Fauquier County sent a teletype to the Hanover County Sheriff's Department stating the defendant's name and the crime with which he was charged and requesting his detention. The teletype constituted authority for the Hanover County Sheriff's Department to arrest the defendant. *See* Code § 19.2-81. Thus, the defendant's detention pursuant to that authority was an arrest on the escape charge.

432 S.E.2d at 193-94.

The detainer/arrest of the defendant operated to trigger the running of the clock for speedy trial purposes and, therefore, the failure to bring the defendant to trial within five months required that he be discharged from prosecution. *Knott v. Commonwealth*, 215 Va. 531, 211 S.E.2d 86 (1975). In *Knott*, the Supreme Court of Virginia dismissed an indictment for failure to provide the defendant a speedy trial on an escape charge. The Commonwealth argued that during the period of time when the defendant was detained at the Alexandria and Fairfax Adult Detention Centers on other unrelated charges, he was not being "held for trial" on the escape charge. The Supreme Court disagreed.

> Since, at all times subsequent to his indictment for the escape felony defendant was held by the Commonwealth in her penal institutions and was available for trial in the court in which the case was pending, we are of the opinion that he was being "held . . . for trial" within the meaning of the speedy trial statute and was entitled to claim its protection.

211 S.E.2d at 87-88.

And, as an arrestee, according to the Commitment Order that accompanied the capias, the defendant was to be "held without bail." In sum, from July 28, 2015, until September 25, 2015, the defendant was being held on both his Fairfax charges and the Loudoun detainer. See *Ford v. Commonwealth*, 33 Va. App. 682, 536 S.E.2d 467, 472 (2000) ("In *Funk*, the local jurisdiction obtained custody and rights over the defendant when Fauquier County teletyped Hanover County, requesting that Hanover County detain the defendant on the Fauquier County charges . . . . *[A]fter Hanover County received the teletype from Fauquier County the defendant was being held on the Hanover and the Fauquier charges.*") (emphasis added).

The Court reaches the same judgment if it analyzes the matter retrospectively. In other words, on September 25, 2015, Judge Kassabian

sentenced the defendant to 180 days of active incarceration. With "good time" credit that meant the defendant's Fairfax sentence expired on August 2, 2015. From August 2, 2015, until September 25, 2015, a period of 54 days, the defendant was not serving his Fairfax sentence, which we now know expired on August 2. What we also know is that during this time period, he was being detained on the Loudoun capias. The 54 days cannot be applied to his Fairfax sentence because it is in excess of that sentence, so it must be applied to the Loudoun sentence associated with the capias. Another way of looking at the matter is the following: What if Judge Kassabian had sentenced the defendant on August 2, 2015, to time served but, for some reason, the defendant was not transferred to Loudoun until September 25. Is there any question in such a scenario that this 54 day period would be applied to the Loudoun sentence? The same result should apply here. In both scenarios, the defendant's Fairfax sentence expired on August 2, 2015.

The issue here is not whether the Fairfax Sheriff has acted consistent with its written policy; indeed it has, which is precisely the problem. That written policy instructs the Sheriff's personnel to hold onto unused jail credit in a suspended sentence case, pending potential use in a future revocation proceeding, even when that unused jail credit could be applied to a sentence associated with a detainer. If it were true that all probationers violate probation, that all probationers get revoked, and that all probationers who are revoked are sentenced to additional periods of active incarceration, the Fairfax Sheriff's policy might be reconciled with the statute; but that is obviously not the case. Our system of justice does not presume that defendants will violate probation, that all probationers will eventually be revoked, or that all revoked probationers will get additional time in jail.

Put another way: The possibility of a future revocation resulting in additional incarceration is entirely speculative and requires five discrete events to occur: First, the defendant must engage in some conduct allegedly in violation of his probationary obligations. Second, the probation officer must determine that the alleged misconduct rises to the level of a reportable violation, rather than misconduct that can be addressed through an administrative sanction. Third, the Court must determine that the alleged misconduct warrants issuance of a Rule to Show Cause or a bench warrant. Fourth, the Court must determine that the defendant is actually guilty of violating his probationary obligations. Finally, the Court must determine that the misconduct warrants imposition of a period of active incarceration. It is far from a given that all probation violations result in a term of active incarceration. Indeed, in the Sentencing Revocation Guidelines, a violation frequently results in a guideline recommendation of no incarceration. Under the Fairfax Sheriff's policy applicable to suspended sentences, only if all five events occur can the unused jail credit be applied for the benefit of the defendant. Even then, the unused jail credit may never be applied because

the defendant may have accumulated new and sufficient jail credit while waiting for the resolution of his probation revocation.

In other words, if the defendant never engages in the alleged misconduct, the unused jail credit is never used. If the probation officer addresses the misconduct with an administrative sanction, the unused jail credit is never used. If the Court determines not to issue a Rule or a bench warrant, the unused jail credit is never used. If the Court acquits the defendant of the alleged violation, the unused jail credit is never used. If the Court finds the defendant guilty of the misconduct but nevertheless concludes that imposition of active incarceration is not warranted, the unused jail credit is never used. And even where a period of active incarceration is imposed, if the defendant has accumulated sufficient new jail credit while awaiting resolution of the probation revocation, the unused jail credit is never used.

It is, of course, true that where there is no alternative use for jail credit, preserving the credit for some potential future revocation is better than treating the credit as extinguished. But where there is an immediate and tangible use for the credit in a case where the credit was earned while the defendant was being detained on both Fairfax and Loudoun charges, there is no justification for withholding an award of jail credit. Unlike a hypothetical probation violation that might or might not ever occur, there is nothing hypothetical about the defendant's Loudoun sentence, nor is there anything hypothetical about the fact that the defendant would benefit from the unused jail credit being applied to his Loudoun sentence.

For a defendant who complies with his probation obligations, and therefore never uses the withheld jail credit, there is no practical difference between treating the credit as reserved for future use and treating it as if it never existed in the first place. The fact that other jails in the Commonwealth may have the same policy is of little consequence to an inmate who has earned, but cannot use, jail credits to which he is entitled. And while there is certainly no evidence or indication that this policy is designed or intended to disadvantage inmates, it nevertheless has that precise effect when a Sheriff declines to apply the credit as was done here. More fundamentally, in this Court's view, the statute forbids it.

Sgt. Thornhill asserts the following rationale for the policy of the Fairfax Sheriff: it would be "a logistical nightmare to contact every single jurisdiction to say, 'Do you have time credit left over? I need to have it'." (Court Ex. at 5.) But that is not this case. The only jurisdiction Fairfax County needed to contact was Loudoun County, a jurisdiction with whom it was already in contact when it awarded the defendant four days of jail credit covering the time period of September 25 to September 29, to be applied to his Loudoun sentence. Moreover, no one is suggesting that a jailer must survey every other jailer in the state to see if an inmate had unused jail credit from some other, unrelated, incarceration. A jail credit is not some fungible commodity that can be banked by an inmate against the

day when the inmate might commit a new crime or be sentenced for an old one, and there is nothing in Virginia Code § 53.1-187 to suggest otherwise. The statute only requires jail credit on the offense for which the defendant is "awaiting trial." This defendant was "awaiting" two trials, one in Fairfax and one in Loudoun and, as the Court of Appeals said in *Ford, supra,* he was being held on both matters. Loudoun's capias, lodged as a detainer at the Fairfax County Adult Detention Center, resulted in the defendant being "held without bail" in Fairfax; it is the presence of the Loudoun-detainer for that 54 day period after the completion of the defendant's Fairfax sentence that entitles the defendant to credit.

In sum, this Court finds that Virginia Code § 53.1-187 requires that the 54 days of unused jail credit be applied to the defendant's Loudoun sentence, notwithstanding the Fairfax Sheriff's policy of reserving unused jail credit for potential future revocations.

*Commonwealth v. Bertini,* 68 Va. Cir. 255 (Fairfax Cnty. 2005), is distinguishable. In *Bertini,* the Circuit Court found that specific decisions regarding jail credits rested solely within the discretion of the executive branch of government. *Bertini,* however, involved an allegedly erroneous jail credit decision made by the Virginia Department of Corrections for a defendant who had received a penitentiary sentence and had already been transferred to the Virginia Department of Corrections. Additionally, as the Circuit Court noted, it did not possess "all of the records concerning the Petitioner's dates of arrest, release on bond and sentences imposed . . . ." *Id.* at 258. Here, the salient facts are not in dispute, the defendant has not been transferred to the Virginia Department of Corrections (*see generally* Va. Code § 19.2-303), and the jail credit decision was not made by the Virginia Department of Corrections. Even had the decision in this case been made by the Virginia Department of Corrections, it would not be beyond the power of judicial review. *See, e.g., Dorr v. Clarke,* 284 Va. 514, 733 S.E.2d 235 (2012); *Carroll v. Johnson,* 278 Va. 683, 685 S.E.2d 647 (2009) (each involving judicial review of Virginia Department of Corrections jail credit decisions). More significantly, what is at issue here is the Fairfax Sheriff's written policy that operates in this case to deprive a defendant of jail credit to which the defendant is statutorily entitled. *Bertini* does not stand for the proposition that a circuit court is without power to address such a situation.